SEEGER REFRIGERATOR CO. v. AMERICAN CAR & FOUNDRY CO.

(Circuit Court of Appeals, Third Circuit. January 22, 1915.)

No. 1865.

1. PATENTS ⬦318—INFRINGEMENT—ACCOUNTING—BURDEN OF PROOF.
    Where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits, unless he sustains the burden of showing that a portion of them is the result of some other thing used by him.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ⬦318.
    Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

2. PATENTS ⬦318—INFRINGEMENT—ACCOUNTING—BURDEN OF PROOF.
    Where an infringing invention is used in combination with noninfringing features, and each jointly but unequally contributes to the profits, as the infringed patent creates only a part of the profits, the patentee is entitled to recover only that part of the net gains, and must give evidence reliable and tangible, and not conjectural or speculative, tending to support or apportion the profits between the infringing and noninfringing features, or show by equally reliable and satisfactory evidence that the

entire value of the whole machine as a marketable article is properly and legally attributable to the patented feature.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

**3. PATENTS ☞318—INFRINGEMENT—ACCOUNTING—BURDEN OF PROOF.**

The burden on a patentee of apportioning the commingled profits on an infringing article between the infringing and noninfringing elements is sustained by proof demonstrating that defendant has so inextricably commingled and confused the parts composing the article that the profits cannot be accurately or approximately apportioned.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. ☞318.]

**· 4. PATENTS ☞319—INFRINGEMENT—ACCOUNTING—SUFFICIENCY OF EVIDENCE.**

In an action for infringement of a patent for an improvement on a refrigerator partition by a manufacturer of refrigerator freight cars, evidence as to the relative cost of the partition, the car, and the body thereof, and as to the cost of installing such partition when furnished by defendant's customers, *held* to furnish a sufficient basis for the apportionment of profits between the infringing and noninfringing features of the car; and hence a judgment for nominal damages only was erroneous.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. ☞319.]

Appeal from the District Court of the United States for the District of New Jersey; Edward J. Bradford, Judge.

Suit by the Seeger Refrigerator Company against the American Car & Foundry Company. From a decree (212 Fed. 742) for complainant for nominal damages only, it appeals. Reversed, with instructions.

Edmund Wetmore, of New York City, for appellant.

Frederick P. Fish, of Boston, Mass., and John G. Johnson, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This appeal is from a decree awarding to the appellant a nominal sum only on account of profits made by the appellee in the use of a device infringing three claims of the appellant's patent. The patent (while in form for a combination) is really for an improvement in one element only, and is specially intended to protect a particular form of opening or port in the partition of a refrigerator. The improvement is fully described by the late Judge Cross in an opinion sustaining the patent, reported in (C. C.) 171 Fed. at page 416, and in the affirming opinion of this court delivered by the late Judge Lanning, reported in 178 Fed. at page 278, 101 C. C. A. 542 (certiorari refused 216 U. S. 618, 30 Sup. Ct. 573, 54 L. Ed. 640).

One of the claims may be quoted, in order to indicate the scope of the patent:

"(1) In a combined refrigerator and freezer, a suitable outside case, a refrigerating room and an ice bunker therein separated by a partition, inverted V-shaped ports in said partition leading from the refrigerating or freezing room into said ice bunker, and ports leading through the bottom of

said ice bunker and thence into the bottom of the refrigerating room, substantially as and for the purposes set forth."

As will be observed, the "suitable outside case" is a widely inclusive phrase; in the present dispute it was applied to a refrigerator freight car equipped with a partition that was held to infringe. An accounting having been directed, the appellant made no claim for damages but asked for profits only, and the master awarded a sum of nearly $663,000. The appellee excepted, and the district court held the appellant's evidence to be deficient and entered a decree for a nominal amount. (D. C.) 212 Fed. 742.

The opinion below discusses very fully and with much care the general rules upon the subject of accounting for profits, and with much of it we are in accord. But we are unable to agree with the conclusion that sufficient evidence was not presented to justify a finding concerning the amount of profit fairly chargeable against the infringing device. The recent decision of the Supreme Court in Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, was evidently intended to furnish a new starting point in the developed law on the subject before us, and we need not consider any other of the numerous cases that have been cited. The importance of the subject may justify us in giving a somewhat detailed outline of that decision.

The device there in question improved an electrical transformer. When a current of low voltage is transformed into a current of high voltage, heat is generated, and heat deteriorates a transformer. The Westinghouse patent deals with this problem, and has proved to be of great value. The Wagner Company was obliged to account for the sale of transformers that infringed claim 4 of the patent. Before the master it was proved that the company had made many other electrical appliances as well as the infringing transformer, and that all its output was made in the same shop by the same workmen and under the same general superintendence. No separate account was kept of the cost of making the transformers, and the company's books did not show definitely what profit, if any, had been realized from their sale. But the books did show that the gross receipts from the sale of all appliances during the accounting period aggregated more than $2,300,000, and that a gross profit of 8 per cent. had been realized thereon. Evidence was also given, such as the growth of the plant and the extension of the business, to warrant a finding that 8 per cent. was not the true profit, but that the company's general policy was to charge prices that would net 25 per cent. From all the evidence the master found that the company had made an approximate profit of more than $132,-000 from the sale of the infringing transformer; and he made this finding in spite of the company's insistence that the evidence was insufficient. The company then undertook to show that the infringing transformers contained certain valuable elements not covered by claim 4, and contended that the plaintiff must therefore apportion the profit and could only recover so much as was due solely to the infringement of that claim. The master disposed of this contention by holding that claim 4 was an entirety, whose elements gave the whole commercial

value to the infringing transformers. Upon this point the court below
and the Court of Appeals disagreed with the master, holding the trans-
formers to contain noninfringing and valuable improvements that con-
tributed to the profits, and restricting the patentee to nominal dam-
ages on the ground that he had failed to offer evidence from which the
profit could be apportioned among the various elements, infringing and
noninfringing.

[1, 2] These were the facts, and the Supreme Court (after saying
that there had been "much controversy upon the subject and a con-
flict in the decisions") evidently thought it desirable to clarify the sit-
uation and to summarize the rules that ought to govern this difficult
and important matter. We quote the two rules that are specially rele-
vant to the present dispute:

"(c) Where profits are made by the use of an article patented as an en-
tirety, the infringer is liable for all the profits, 'unless he can show—and
the burden is on him to show—that a portion of them is the result of some
other thing used by him.'" Elizabeth v. Pavement Co., 97 U. S. 126, 24 L.
Ed. 1000.

"(d) But there are many cases in which the plaintiff's patent is only a
part of the machine and creates only a part of the profits. His invention
may have been used in combination with valuable improvements made, or
other patents appropriated by the infringer, and each may have jointly, but
unequally, contributed to the profits. In such case, if plaintiff's patent only
created a part of the profits, he is only entitled to recover that part of the
net gains. He must therefore 'give evidence tending to separate or apportion
the defendant's profits and the patentee's damages between the patented
feature and the unpatented features, and such evidence must be reliable and
tangible, and not conjectural or speculative; or he must show, by equally re-
liable and satisfactory evidence, that the profits and damages are to be calcu-
lated on the whole machine, for the reason that the entire value of the whole
machine, as a marketable article, is properly and legally attributable to the
patented feature.'" Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L.
Ed. 371.

[3] Recognizing the difficulty of applying rule (d) in cases where it
is not possible to separate a single profit into its component parts, the
court gives special attention to this subject. The opinion refers to
the object of section 4921 of the Revised Statutes (Comp. St. 1913, §
9467), namely, to afford ample redress against an infringer, and points
out the danger that this object may be nullified by the ingenuity of in-
fringers, who may so smother a patent with improvements that the
injured patentee cannot possibly separate the illegal gain into parts,
thus producing the indefensible result that "the greater the wrong, the
greater the immunity." It is then declared that while the patentee
must prove his case, and must carry "the burden imposed by law upon
every person seeking to recover money or property from another," this
general rule has its limitations and must not be pressed so far as to
override other rules equally important. Applying the rule with its lim-
itations to the case then in hand, the court takes up the course of
proceeding before the master, saying that when the patentee had
proved his patent and the defendant's infringement, and had offered
evidence tending to show that profit had been made, he had sustained
the burden imposed upon him. Thereupon the burden shifted to the
defendant, who had sustained it in turn by offering evidence to the ef-

fect that some part of the profit was due to the use of noninfringing and valuable improvements. The court assumed that the defendant had made out a prima facie case in this respect, and that the burden was again shifted—"the burden of apportionment was then logically on the plaintiff, since it was only entitled to recover such part of the commingled profits as was attributable to the use of its invention." .

Now, how did the plaintiff sustain this burden? The problem was admittedly difficult, for, although profits in general had been proved, the witnesses were unable to apportion them among the infringing and the noninfringing elements. Nevertheless, the court held that the plaintiff had done all that was required of it, and applied one of the limitations to the general rule:

"Having, by books and other data, proved to the satisfaction of the master the existence of profits. the plaintiff had carried the burden imposed by law, and established every element necessary to entitle it to a decree, except one. As to that, the act of the defendant had made it not merely difficult but impossible to carry the burden of apportionment. But plaintiff offered evidence tending to establish a legal equivalent. It had proved the existence of a fact which, whether treated as a rule of evidence or as a matter of substantive law, would entitle it to a decree for all the profits. The method was different from that mentioned in the second branch of the rule in the Garretson Case, 111 U. S. 120 [4 Sup. Ct. 291, 28 L. Ed. 371]; but the plaintiff had now presented proof to demonstrate its right to the whole of the fund, because of the fact that the defendant had inextricably commingled and confused the parts composing it. This result would not be in conflict with the principle which in the first instance imposed the burden of proof on the plaintiff. but merely gave legal effect to a new fact which as a matter of law entitles the patentee to a particular judgment. It presented a case where the court was called on to determine the liability of a trustee ex maleficio, who had confused his own gains with those which belonged to the plaintiff. One party or the other must suffer. The inseparable profit must be given to the patentee or infringer. The loss had to fall on the innocent or the guilty. In such an alternative the law places the loss on the wrongdoer."

The rest of the opinion is mainly taken up with stating and answering the supposed objections to applying the doctrine of confusion of goods to patent cases; the conclusion being that the doctrine ought to be applied, but only when the patentee has exhausted all available means of apportionment. If he has done this, if he has "resorted to the books and employés of the defendant, and by them or expert testimony (has) proved that it was impossible to make a separation of the profits," the doctrine of confusion of goods is then to be applied.

And the court added:

"It may be argued that, in its last analysis, this is but another way of saying that the burden of proof is on the defendant. And no doubt such, in the end, will be the practical result in many cases. But such burden is not imposed by law; nor is it so shifted until after the plaintiff has proved the existence of profits attributable to his invention and demonstrated that they are impossible of accurate or approximate apportionment. If, then, the burden of separation is cast on the defendant, it is one which justly should be borne by him, as he wrought the confusion."

[4] Let us apply these principles to the case in hand. The partition of the Quinn patent, with its peculiar openings, is only a small element in the refrigerator cars made by the defendant. These cars are made

up of running gears and body, but of course the gears are so entirely distinct and so easily separable that we may lay them aside without discussion. And, even when we confine ourselves to the body alone, it seems clear that the body is composed of numerous parts that have so little to do with the peculiar openings in the partition that it would be out of the question to regard the whole profit on the body as due to the use of the partition alone. The master, however, felt bound to take this view, deciding, in effect, that the body was a unitary structure, and held the defendant accountable for the whole profit on the body of each car, after deducting an allowance conceded by the plaintiff. We agree with the district judge that this basis of calculation was erroneous, and approve the reasoning to be found on pages 749 and 750 of 212 Fed., but (as already stated) we cannot agree that the evidence forbids the recovery of more than a nominal amount. We think neither the master himself nor the court below gave sufficient weight to the following portion of the report:

"Complainant's fourth request is, in part, a claim for apportioning the profits to the costs of the parts. This, it is found, is not mere 'makeshift' or only 'sufficiently accurate,' as characterized by counsel for complainant; nor is it thought to be, as defendant describes it, 'arbitrary, fanciful, and unsupported by evidence.' The price of the car not having been the sum of the prices of the component parts nor in proportion thereto, but only a single price for the whole—only what 'the traffic will bear'—the apportionment of the profits to the cost of the part is simply analytical, and should be applied to this accounting.

"This request raises also the question of the influence of the patented feature upon the sale of the car body. The usual two lines of cases in accountings for profits are arrayed against each other. For the defendant it is contended on the authority of Garretson v. Clark, 111 U. S. 120,[1] and many other cases, that complainant must separate and show by reliable evidence the profits due to the patented part, and that failure to do so in this case is fatal to any substantial recovery. Defendant's contention is that the proofs do not show the profits on any parts but only on the whole. Intrinsic values of parts in question are likely and, so far as appears, indeterminable.

"The testimony of Mr. Thompson, assistant general manager of defendant company, shows an average cost of the partitions of $45. The partition features of the combination protected by the sustained claims of the patent in suit characterize this partition. The car cost $914.38. The profit thereon was $171.74. Therefore the profit assignable to the partition is $45/914.38$ of $171.74, or $8.451. On the 4,097 of them furnished by defendant, the profit at same rate is $34,623.74. This rate, expressed decimally, is 18.78 per centum. That is to say, the profit assignable to any part of the cost of the car is 18.78 per centum of the cost. For the remaining 11,935 cars in question, the purchasers furnished the partitions and defendants installed them. Since there was no cost to defendant for these partitions themselves, defendant could not, for the reason stated, have made any profits on them. But there was expended the cost of labor in installing them, and on this cost there was a proportional profit. The basis suggested by complainant's counsel in their last brief for estimating this cost seems too uncertain for adoption. It rests finally on the fact that the plain partitions cost $10. From this it is thought likely that materials cost $6 and labor $4. It would cost, they suggest, about the same to install them as it would to install the kind in question. And the chance of approximation to correctness is increased, it is said, by nearness to the general percentage of labor. But it cannot be found that the percentage which all the labor is of all the cost is any criterion for the labor on any particular part. So far as is known, a part costing little may require proportionally a large amount of labor. While the

[1] 4 Sup. Ct. 291, 28 L. Ed. 371.

cost of this labor does not appear, the method adopted by defendant of getting at the cost of the cars and striking the average, and the purpose for which the computation was made, leave little doubt that this cost of labor was not overlooked. We know, from the drawings and specifications, the dimensions of the partition and the materials used—that its fitting all around must have been close enough to stop air pressure, except between the slats; that, the partitions being made by others and sent to defendant, this fitting was work of nicety and required time; that the weight and size must have required more than one man in the first stages of the installment. All this, it can scarcely be doubted, as matter of common knowledge, did not cost less, at ordinary carpenter wages, than $3 for each partition. Applying the said rate to this part of the cost we have $3 x .1878 equals $0.5634 profit on the labor of installing each partition and 11,935 x .5634 equals $6,724.17. It is found therefore, that profits due to the infringement of the sustained claims of the patent in suit were at least the said $34,623.74 on partitions and said $6,724.17 on labor, amounting to $41,347.91."

There is perhaps some room for criticism on the ground that the master should have taken the profit on the car body alone, and not on the whole car, as the basis of calculating the profit on the partitions in the 4,097 cars first referred to. But practically the result is precisely the same, for the profit on the body was $88.44, and the percentage of profit attributable to the infringing partition is 8.451, which produces the same figures as the other calculation—$34,623.74. As it seems to us, therefore, the finding of the master rests upon sufficient evidence and furnishes a satisfactory basis for a decree. The plaintiff has done all that can fairly be required of it; evidence was offered (mainly by stipulation) whereby the profit on the whole car can be divided between the running gears and the body, and whereby also the approximate cost of the partitions themselves and the profit on these can be calculated; and we think this meets the requirements of the situation. We see no reason why the master might not draw reasonable inferences from the evidence, as in other cases, or avail himself of well-known facts in daily life. The correctness of the calculation is not challenged (although the soundness of the theory is denied), and we think, therefore, the plaintiff has fully complied with the rules in the Westinghouse Case; proof has been furnished that the defendant made profit on a structure embodying the patented device, and (instead of showing that the profit could not possibly be apportioned) the plaintiff has gone further and has furnished evidence that satisfied the master (although he did not follow his own finding) that such an apportionment could fairly and reasonably be made.

We may note also that the Supreme Court has recently (January 11, 1915) decided the case of Dowagiac, etc., Co. v. Minnesota, etc., Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. ——, in which the subject of accounting for profits is again considered, but the opinion merely follows the rules laid down in the Westinghouse Case, and holds that the Dowagiac Company had not conformed to these rules.

"It neither submitted evidence calculated to effect an apportionment nor attempted to show that one was impossible; and this although the evidence upon the accounting went far towards showing that there was no real obstacle to a fair apportionment. Certainly no obstacle was interposed by the defendant. It well may be that mathematical exactness was not possible, but, as is shown in Westinghouse Co. v. Wagner Co., supra (225 U. S. 617, 620, 621, 622 [32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653]), that

degree of accuracy is not required but only reasonable approximation, which usually may be attained through the testimony of experts and persons informed by observation and experience. Testimony of this character is generally helpful and at times indispensable in the solution of such problems. Of course, the result to be accomplished is a rational separation of the net profits, so that neither party may have what rightfully belongs to the other, and it is important that the accounting be so conducted as to secure this result, if it be reasonably possible."

We repeat that in our opinion evidence does exist in the present case, from which the profits on the infringing device may be calculated with reasonable approximation. The decree is reversed, with costs in this court and in the court below, and with instructions to the district court to enter a decree in accordance with this opinion.