MORGAN CONST. CO. et al. v. FORTER–MILLER ENGINEERING CO. et al.

FORTER–MILLER ENGINEERING CO. et al. v. MORGAN CONST. CO. et al.

(Circuit Court of Appeals, Third Circuit. June 6, 1916.)

Nos. 2090, 2091.

1. PATENTS ⬡318(3)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

On an accounting for profits made by infringement of a patent for an improved form of furnace for heating ingots and billets in rolling mills, by the use of infringing furnaces, where the inquiry was limited to the saving of labor cost, the proper standard of comparison was with the furnaces in previous use by defendant, and which were replaced by the infringing furnaces; and, the improved structures being of a unitary character, complainant was entitled to recover the entire difference in cost of the heating operation as between the two different types of furnace.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 570, 571, 575; Dec. Dig. ⬡318(3).]

2. PATENTS ⬡318(6)—INFRINGEMENT—ACCOUNTING FOR PROFITS.

A defendant which made and sold rolling mill furnaces which infringed complainant's patent on an accounting for profits is not entitled to a deduction of the cost of changes subsequently required to satisfy the purchaser.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 576; Dec. Dig. ⬡318(6).]

Cross-Appeals from the District Court of the United States for the Western District of Pennsylvania.

Suit in equity by the Morgan Construction Company and Alexander Laughlin against the Forter-Miller Engineering Company and Dilworth, Porter & Co., Limited. From the final decree, both parties appeal. Decree against Dilworth, Porter & Co. modified and decree against Forter-Miller Engineering Company affirmed.

For prior opinion, see 213 Fed. 451, 130 C. C. A. 97.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Marshall A. Christy, of Pittsburgh, Pa., for Morgan Const. Co.

Clarence P. Byrnes and C. M. Clarke, both of Pittsburgh, Pa., for Forter-Miller Engineering Co.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. This suit was brought by the Morgan Construction Company and Alexander Laughlin against the Forter-Miller Engineering Company and Dilworth Porter & Co., Limited, and is based upon the asserted infringement of patent No. 632,020, granted to Charles H. Morgan on August 20, 1899, for an "improvement in furnaces for heating ingots or billets for rolling mills." The Engineering Company is charged with building certain furnaces, and Dilworth, Porter & Co. are charged with using five of the furnaces so built. This court sustained several claims of the patent, and held them to be infringed. 213 Fed. 451, 130 C. C. A. 97. Thereupon the District Court appointed a master to state an account, and in the hearings before him the plaintiffs confined themselves to a demand for profits. The master and the district court sustained the demand in part, and a decree was entered awarding $10,605.88 against the Engineering Company, and $14,496.84 against Dilworth, Porter & Co. From this decree the cross-appeals before us have been taken.

[1] 1. The plaintiffs restricted their claim against Dilworth, Porter & Co. to the profit arising from a lower cost of labor; and this at once raises the question, With what furnace should the five infringing structures be compared? We think the answer is not difficult. Nos. 1 and 2 replaced two Siemens furnaces, which had been used for heating billets in the same mill; No. 3 replaced five Siemens furnaces, which had been used in another mill; while Nos. 4 and 5 did not replace any other furnaces, but were additional structures. Nos. 1 and 2 were built in 1907, and the other three were built in 1911. The defendants offered some evidence concerning the cost of operating other kinds of furnaces elsewhere, and presented these furnaces as standards of comparison, asserting them to be essentially of the same type as the Morgan structure. They were rejected by the master and the district court, and we agree with this rejection, holding the Siemens furnace to be the proper standard.

The next question is whether comparison should be made between the total cost of the heating operation in each type of furnace, or should be confined to the cost directly attributable to the inclined section of Morgan's patent. Can such a cost be ascertained, and, if so, is this a case for apportionment, such as was presented in Seeger Co. v. American Car Co. (C. C. A. 3d) 219 Fed. 565, 135 C. C. A. 333? Here also we agree with the master and the District Court. In our opinion, the invention of the patent does not lie in one element so exclusively as to permit a fairly accurate ascertainment or apportionment of cost, but is of such a character that the proper comparison is between the whole cost of the two heating operations respectively. We think it impracticable to assign a definite fraction of the cost to the presence or to the absence of the inclined section referred to, and we refer to

the opinion in 213 Fed. 451, for the reasons why the improved structure of the patent should be regarded as unitary in its nature and in its use. This subject of apportionment is often difficult, and minds may readily differ about it, as they differ continually about the subject of patentable invention. In both regions, there will always be a borderland, where one view of the facts is not easy to distinguish from the other.

Taking the Siemens furnace, therefore, as the standard, the next inquiry is the labor cost of heating in that structure, and the sum that was saved by using the infringing furnace. In each case we disregard the cost of getting the billets to the charging end of the furnace, and we disregard also the cost of moving the billets to the rolls, after they have been fully taken out of the furnace. After the billets have been heated and have left the furnace, a separate operation begins, namely, the task of moving them to the rolls, and this is outside the scope of the patent. At this point we encounter what appears to be some confusion in the master's computation. Considering the cost at Nos. 1 and 2, we observe that (in the first instance) the evidence before him appeared to show that in the Siemens furnace the heating operation cost 62 cents per ton for labor, and that the total wages for heating in each of the infringing furnaces was 34.2 cents, making a prima facie difference, or profit, of 27.8 cents. But on closer scrutiny it appeared that the 62 cents included an item of 14 cents, and that this was the wages of four men called "drag-outs," who took the billets out of the furnace and dragged them over to the rolls; and it appeared, further, that about the time when Nos. 1 and 2 were put into use this item was reduced to 12 cents, the saving being effected by installing a mechanical conveyor, which received the billets as they came out of the furnace and carried them to the rolls. The plaintiffs conceded therefore that 2 cents of the apparent profit of 27.8 cents was really due to the conveyor, and not to the patented furnace, and should be credited to the defendants. And they conceded a further allowance of 2.5 cents (also included in the 34.2 cents) for the cost of operating the pusher, so that, after these two allowances were made, the difference between the cost of operating a Siemens furnace and the cost of operating either No. 1 or No. 2 was reduced to 23.3 cents. This was the plaintiffs' calculation, but the master declined to accept it, holding that the 14 cents paid to the drag-outs was not part of the cost of heating, but was the cost of a separate operation, and therefore should not be considered. But instead of striking it out of the 62 cents, he struck it out of the balance of 23.3 cents above referred to. The plaintiffs do not object to the deduction in itself; they only complain that the master has taken it off in the wrong place, and insist that his method should be corrected by restoring the previous credit of 2 cents already allowed for the use of the conveyor. We agree with this contention. If the cost of moving the billets to the rolls is an improper item in one branch of the comparison, it is equally improper in the other, and should be eliminated from both sides.

But the plaintiffs complain that the master was mistaken about another item that is closely connected with the 2 cents just considered.

As already stated, the 62 cents included 14 cents paid to the drag-outs for taking the billets out of the Siemens furnace and moving them over to the rolls. When the infringing furnaces were built and the conveyor was installed, the work of dragging was dispensed with, but some other work was still necessary before the conveyor could properly handle the billets, the reason being that several billets at a time would slide down the gravity incline of the infringing furnace, and these would require separation because the conveyor and the rolls could only take them singly. This work was done by 3 pull-out boys at a cost of 6 cents a ton, and the master allowed this item also as a credit to the defendants. Now, if this labor was made necessary by the operation of the patented structure, the cost is a proper allowance; otherwise, it should be rejected. This proposition is not disputed, and the correct answer depends on what the facts are. The master has found that the labor *was* made necessary by the operation of the Morgan furnace, and although the evidence is not very satisfactory, we cannot say that it does not justify his conclusion. Accepting it, therefore, we are of opinion that on the plaintiffs' appeal the decree should be so modified as to increase the award against Dilworth, Porter & Co. by 2 cents a ton only. Concededly, this applies to the five infringing furnaces, and not merely to Nos. 1 and 2.

[2] 2. The appeal of the Forter-Miller Engineering Company does not require extended discussion. The master's report has satisfactorily disposed of all the questions except one, and we agree with the following paragraphs:

"The next question to be considered is the question of profit made by the Forter-Miller Engineering Company from its manufacture and sale of the five infringing furnaces to the Dilworth-Forter Company. This profit is shown by the testimony to be on Nos. 1 and 2 furnaces, $3,131.45.

"The defendant at a late date introduced evidence to the effect that the original form of these two furnaces was without the gravity discharge, and therefore was noninfringing for the space of two months, and that when they were changed the work was done, not by the builder, the Forter-Miller Engineering Company, but by employés of Dilworth, Porter & Co., the other defendant. This evidence was introduced in the hope of eliminating the manufacturer's profits on these two furnaces, and also of providing a method of comparison of the cost of working the furnaces in infringing and noninfringing forms. This testimony is in direct contravention of the former testimony of the same and other witnesses in the District Court, as well as in these proceedings, and, although relevant, does not carry the weight which it otherwise would. Defendant relies upon blueprint Exhibit A, which accompanied the original bid or proposition of the Forter-Miller Engineering Company, as accepted by Dilworth, Porter & Co., showing how the furnaces were to be built, and upon evidence produced by one witness whose recollection is not always reliable, and by another, an officer of the manufacturer, who says that he does not remember a change being made in these furnaces, and that, although he was away from his office for long periods, he would have known of such a change if the work was done by his company. The master, therefore, considers this proof insufficient to controvert the former positive testimony, and as a result disregards this evidence. As for this original two months' form of the furnaces forming a basis for comparison in cost of operation, it must appear from the defendant's statement of the amount of steel heated in these furnaces, by months, that the furnaces in this noninfringing form were unsatisfactory and were soon altered to the form which precipitated this suit.

"The testimony shows on furnaces Nos. 3, 4, and 5, that the Forter-Miller Company made a profit of $6,371.83, making a total recovery of profits for the

five infringing furnaces of $9,503.28. To be added to this is $1,102.50, the profit made by the Forter-Miller Company from the manufacture and sale of the furnace built for the Portsmouth Steel Company, making a total of $10,-605.88. These figures are taken from the two statements made by Mr. A. K. Barker, treasurer of the Forter-Miller Engineering Company, with the deduction of certain items wrongly charged therein."

The excepted question is this: The master refused to allow a credit of about $1,600 claimed by the Engineering Company under the following circumstances: When Nos. 4 and 5 were built and accepted in December, 1911, they infringed, but Dilworth, Porter & Co. afterward became dissatisfied with their operation. The following extract from the testimony will show what was done:

"The large billets did not slide on the slope, and then we made the slope steeper. This brought the last billets too close to the air inlets, and we therefore moved the end wall further out on the one furnace, but as this was not sufficient, we put an overshot on both furnaces, bringing the gas and air entrances further away from the billets."

In a word, the position is this: The Engineering Company, having built two infringing furnaces, was required several months afterward to make some changes in order to satisfy Dilworth, Porter & Co. Apparently, the changes were intended to make the infringement more effective, and the question is who should bear the cost. It seems to us, briefly, that the infringement was complete before the changes were made, and that the Engineering Company's liability attached then; the plaintiffs can hardly be asked to make good the loss that the Engineering Company subsequently suffered.

On the appeal in No. 2090 the decree is reversed, with instructions to modify the award against Dilworth, Porter & Co. in accordance with this opinion; on the appeal in No. 2091, the decree against the Forter-Miller Engineering Company is affirmed.