WAYNE MFG. CO. et al. v. COFFIELD MOTOR WASHER CO.*

(Circuit Court of Appeals, Eighth Circuit.   October 28, 1915.)

No. 4445.

1. PATENTS ☞157—CONSTRUCTION AND SCOPE.
    A patentee is entitled to all that his patent fairly covers, even though
    its complete capacity was not recited in the specification, and was even
    unknown to the inventor prior to the issuance of the patent.
    [For other cases, see Patents, Cent. Dig. §§ 229–232; Dec. Dig. ☞157.]

2. PATENTS ☞112—VALIDITY—OATH TO APPLICATION.
    A recital in a patent that the required oath was made by the applicant,
    in the absence of fraud, is conclusive of that fact in a suit against an
    infringer.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec.
    Dig. ☞112.]

3. PATENTS ☞112—VALIDITY—PRESUMPTION FROM ISSUANCE.
    A patent issued in due form is evidence that all formal prerequisites
    to its issuance have been complied with, and the finding of the commis-
    sioner thereon cannot be collaterally attacked in an infringement suit.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec.
    Dig. ☞112.]

4. PATENTS ☞113—REISSUES—REVIEW BY COURTS.
    The courts cannot review the decision of the Patent Office as to the
    sufficiency of the showing of inadvertence, accident, or mistake to au-
    thorize a reissue, unless the matter is manifest from the record.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 155–161; Dec.
    Dig. ☞113.
    Grounds for reissue of patent, see note to General Electric Co. v. Rich-
    mond St. & I. Ry. Co., 102 C. C. A. 145.]

5. PATENTS ☞328—VALIDITY AND INFRINGEMENT—WATER MOTOR.
    The Coffield reissue patent, No. 12,719 (original No. 807,779), for a wa-
    ter motor for operating washing machines, was applied for within a rea-
    sonable time, discloses and covers an invention within the original specifi-
    cation, which was not anticipated, and discloses patentable novelty and
    invention.  Defendant held not to have acquired intervening rights prior
    to the application for reissue, and to have infringed.

Appeal from the District Court of the United States for the Eastern
District of Missouri; David P. Dyer, Judge.

Suit in equity by the Coffield Motor Washer Company against the
Wayne Manufacturing Company and the American Washer Company.
Decree for complainant, and defendants appeal.  Affirmed.

See, also, 209 Fed. 614, 126 C. C. A. 608.

L. C. Kingsland, of St. Louis, Mo. (John D. Rippey, of St. Louis,
Mo., on the brief), for appellants.

Richard J. McCarty, of Dayton, Ohio (Homer Hall, of St. Louis,
Mo., on the brief), for appellee.

Before HOOK, Circuit Judge, and YOUMANS and ELLIOTT,
District Judges.

ELLIOTT, District Judge.  This is an appeal by the appellants,
hereinafter referred to as the defendants, from a decree in favor of

the appellee, complainant below, and hereinafter referred to as complainant, perpetually enjoining the defendants, their agents, etc., from making or selling or in any way disposing of water motors embracing or containing the inventions or improvements described in the claims of complainant's reissued patent, No. 12,719, for a water motor, with a provision in the decree appointing a master for the purpose of an accounting.

Complainant's patent was sustained in extended litigation in the Fourth Circuit. P. T. Coffield & Son v. Spears & Riddle et al. (C. C.) 169 Fed. 641; Coffield Motor Washer Co. v. A. D. Howe Co. (C. C.) 172 Fed. 668; A. D. Howe Machine Co. v. Coffield Motor Washer Co., 197 Fed. 541, 117 C. C. A. 37. An appeal from an order granting a preliminary injunction restraining these defendants in this action from infringing said patent was by this court determined adversely to the defendants, and the order granting such preliminary injunction was affirmed. 209 Fed. 614, 126 C. C. A. 608.

The intent, purpose, and a complete history of complainant's said patent, with drawings and specifications, are fully set forth in the foregoing citations. The different angles from which this patent has been attacked appear fully therefrom, and numerous alleged prior art patents, covering many forms of power generators, are referred to and described in these cases, and it appears that all of them, seriously urged by defendants here, were, with one exception, known to the defendants in these different suits, and were brought to the attention of the different courts in which the litigation has been pursued, and to the court below and this court upon the former hearing. Reference is made to the report of these cases, for all of these matters, for the purpose of saving repetition. The one exception referred to is the Bryan patent, No. 346,190, dated July 27, 1886, for a valve gear for steam pumps. This last patent, not having been described in the foregoing decisions, special reference will be hereafter made to it.

The allegations of complainant's bill, filed in the court below, fully set forth all of the rights claimed by the complainant, under and by virtue of his said patent, including proper drawings and specifications, fully covering the patent, its purpose, its uses, the method of its use, as set forth in detail in the cases above cited, together with proper allegations of infringement by the defendants. The defendants answered with sufficient denials, and setting out the usual defenses of lack of patentability; lack of infringement; that the patentee was not the original inventor of said improvements; that, after having filed the original application for letters patent, the specifications were changed, and the patent was unlawfully issued, with changed and altered specifications, embracing new matter; that the invention and all of its substantial parts had been previously described and illustrated in letters patent, giving a list of them; that the reissued patent was issued without legal authority, for reasons therein stated; alleging noninfringement of the patent in suit; alleging intervening rights, and that the public generally, and appellants specifically, acquired, during the interim between the issue of the original patent and the reissue thereof, vested rights; that the bill of complaint is without equity; and by stip-

ulation the answer was amended, asserting the claims of the defendants with reference to patent No. 346,190, dated July 27, 1886, granted to L. W. Bryan. Proper replication was filed by complainants.

The assignment of errors is in substance, and to the effect, that the decree of the court below is erroneous, in that it should have dismissed complainant's bill for want of equity, contending: (1) That the court should have held that the claims of complainant's patent herein are invalid: (a) Because the claims are destitute of patentable novelty; (b) because the reissued patent was granted without legal authority; (c) because as to these defendants the claims are inoperative, because defendants, during the interim between the granting of the original patent and the reissued patent, acquired vested intervening rights to manufacture and sell the motors alleged to infringe, and particularly motors having coil springs fastened on the cylinder heads. (2) That the court should have found no infringement.

Considering complainant's patent as minutely described and fully discussed in the above citations, we proceed to consider defendants' first contention—that there was no patentable novelty. An examination of the record discloses that the Board of Appeals in the Patent Office concluded that Coffield, the patentee of complainant's patent, was the first to use, in connection with the elements of the mechanism, springs which complete the stroke of the valve, and that, taken as a whole, the device was new, useful, and patentable. The record discloses the fact that the original application of patentee was denied in the Patent Office, and that his patent was secured only after an appeal had been taken to the board; that thereafter his application for a reissue was denied in the Patent Office, and the Board of Appeals, whose membership differed from that of the first Board that considered the original patent, again considered his invention, and upon the last consideration it considered the prior art patents relied upon by those who were contesting patentee's right to the reissue, which are pointed out in its report and made a part of the record, with the distinguishing features of Coffield's device. The reissued patent was therefore an expression of the deliberate judgment of the Board of Appeals.

From the record it seems undisputed that the reissued patent of the complainant comprises a reciprocating water motor, with special features which adapt it for operating washing machines in domestic use. It appears that it is successful because of its simplicity and efficiency, and because it does not require the services of a skilled person to keep it in running order. The record shows this motor durable in construction, certain in action, and free from trouble. It further clearly appears that water ordinarily taken from the municipal waterworks system varies in pressure, and this motor, without any change in its construction, acts with equal efficiency under pressures of wide differences. This is accomplished by protecting the springs from the work of unseating the valves, the life of the springs is prolonged, and troubles due to breaking the springs are largely reduced. The work of unseating the valves is performed by means other than the springs, the valve stems striking the cylinder heads. These valve stems, being

rigid bodies, work equally well under all conditions of high or low pressure, and are made amply strong to resist indefinitely the different forces to which they may be subjected. This, in substance, appears as the claim of the inventor, from the description of the motor and its mode of operation. The record discloses that this device possesses such change from the prior art as to receive the approval of the Board of Appeals, and it is entitled to the presumption of invention, which attaches to a patent.

[1] Complainant is entitled to all that its patent fairly covers, even though its complete capacity was not recited in the specifications, and was even unknown to the inventor prior to the patent issuing. The law regards a change as a novelty and the acceptance and utility of the change is further evidence, as a demonstration, of novelty. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527. This record is replete with evidence of the acceptance and utility of this device, as well as prolonged litigation over it, tending to show and measure the existence of public demand for its use. We have no difficulty in determining from the evidence in the case that complainant's device is and was an advance in the art, that the patent represents a type of water motor that can be made to work successfully if the valve stems and the springs are so arranged that the former will do the heavy work of unseating; the latter impart the final movement and complete the work of reseating. In this field Coffield was a pioneer and the claims of his patent are patentable.

Considering defendant's contention, *that the reissued patent was issued without legal authority*, they first assert that the original patent was void on the ground that the claim in the original patent was predicated on new matter injected into the specifications by the amendment of May 1, 1905, which new matter was unsupported by any oath, and it is further contended that the original patent being void, the reissue thereof is void also. It is claimed by the defendants that the amended application and model filed by Coffield, embodied material additional to, or at variance from, the original. We find as a matter of fact that nothing new was comprised therein. There was no departure by this amendment from the invention as originally disclosed in the application filed. The facts apparent from the face of the Patent Office record of the original patent disclose no irregularity that renders the original patent void, and therefore the reissued patent cannot for that reason be determined invalid.

[2] They next assert that the oath accompanying the reissued patent in suit is not a legal or valid oath, because it was administered by the solicitor who prosecuted the application. In the case at bar the recital in the patent that the required oath was made by the applicant is, in the absence of fraud, conclusive evidence of that fact. The presence in the files of the Patent Office of a paper purporting to be an oath in a given case, even if void for lack of a jurat, or other fault, is harmless. In such case the law presumes the oath recited in the letters patent was made orally, or was embodied in some other paper. It is presumed that the Commissioner will never issue a patent till he *is*

satisfied that the applicant has somehow made oath to the facts to which the statute requires him to swear. When the Commissioner is so satisfied and recites the fact in the letters patent, all inquiry on the subject is foreclosed, except in case of actual fraud. Walker on Patents, § 122; Empire Cream Separator Co. et al. v. Sears, Roebuck & Co. (C. C.) 157 Fed. 238. This patent recites that the required oath was taken, and this, in the absence of fraud, is conclusive, in a suit against an infringer. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33.

[3] There is neither allegation nor proof of fraud in this record. It is undisputed that the Commissioner of Patents accepted a surrender of the original patent in this case and granted the reissued patent. His decision in the premises in this suit for infringement is final and conclusive, and is not re-examinable in this suit; it not appearing upon the face of the patent that he exceeded his authority, and it further affirmatively appearing that there is no repugnancy between the old and the new patent, it affirmatively appearing that the new patent is for the same invention as that embraced and secured in the original patent. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Battin v. Taggart, 17 How. 74, 15 L. Ed. 37; Railroad Co. v. Stimpson, 14 Pet. 458, 10 L. Ed. 535; Stimpson v. Railroad, 4 How. 380, 11 L. Ed. 1020; Rubber Co. v. Goodyear, 9 Wall. 797, 798, 19 L. Ed. 566. This court can only examine and pass upon what appears upon the face of the patent, and say whether there is anything to indicate its invalidity or render it void upon its face. All questions of fact behind the patent are to be examined, heard, and determined by the Commissioner of Patents. Giant Powder Co. v. Safety Nitro Powder Co. (C. C.) 19 Fed. 509. Mr. Justice Miller said, in Re Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665:

"The doctrine is well established that a grant by the government, within its lawful authority, evidenced by a patent under its seal and the signature of the Executive, cannot be impeached collaterally. It must be recognized as valid in all courts, when it is introduced as evidence of the right which it confers, and can only be avoided by a direct proceeding by way of scire facias, or bill in chancery to set aside the grant for some of the reasons which made its original issue a wrongful act."

See United States v. Stone, 2 Wall. 525, 17 L. Ed. 765; United States v. Throckmorton, 98 U. S. 61–70, 25 L. Ed. 93; Mowry v. Whitney, 14 Wall. 434, 20 L. Ed. 858.

We are therefore of the opinion that this patent, having been issued under the seal of the United States, properly signed and countersigned, a presumption of law attaches that these public officers performed their proper official duties, and where, as in this case, a patent was granted upon evidence and proofs laid before the proper officer, upon which he decided, the fact that he has acted and granted the patent is prima facie evidence that the proofs have been regularly made and were satisfactory. It is clear that no other tribunal is at liberty to re-examine collaterally into the sufficiency of such proofs as laid before him, when the law made such officer the proper judge of their sufficiency and competency. Railroad v. Stimpson, 14 Pet.

458, 10 L. Ed. 535. We therefore find that the reissued patent was issued with authority of law, and is not void for this reason urged by the defendants.

Defendants next assert the invalidity of the reissued patent, claiming that it is not for the same invention as that originally disclosed. The validity of the reissue in suit was upheld in Peter T. Coffield & Son v. Spears & Riddle (C. C.) 169 Fed. 641, and, upon appeal, in Neff v. Coffield Motor Washer Co., 210 Fed. 166, 127 C. C. A. 24; also in Coffield Motor Washer Co. v. A. D. Howe Co. (C. C.) 172 Fed. 668, and, upon appeal, in 197 Fed. 541, 117 C. C. A. 37. The Supreme Court of the United States denied a petition for a writ of certiorari in the case last mentioned. 227 U. S. 677, 33 Sup. Ct. 405, 57 L. Ed. 700.

In view of the discussion as to the validity of this reissue in the foregoing cases, it would serve no good purpose to discuss the details and specifications upon which the reissue was predicated. Suffice it to say that we have no trouble in determining that the specification as originally drawn was defective and insufficient, and that the claims were narrower than Coffield's actual invention. We also find that these errors arose from inadvertence and mistake, and the patentee was guilty of no fraud or deception. It appears from the record that the reissue is for the same invention as the original patent, as the invention appears from the specifications and drawings, and constituted an enlargement of his claims, so as to make it extend to the limits of his invention. There is nothing in the record that tends to show that there was an attempt to make it extend beyond such limits. This reissue is within the rules laid down in Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, and this contention of the defendants must be denied.

[4] The defendants further urge insufficient showing as to inadvertence, accident, or mistake. We cannot review the decision of the Commissioner upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record. Topliff v. Topliff, supra, 145 U. S. 171, 12 Sup. Ct. 825, 36 L. Ed. 658. We find no facts upon the face of this record justifying this exception of the defendants, and the same must be overruled.

[5] The defendants urge that the application for a reissue was not made within a reasonable time. The matter of the reasonableness of the time within which the reissue was applied for is a matter of law for the court, upon the facts appearing of record, taking into consideration the history of the patent, and the circumstances attending the delay. Coffield received the original patent December 12, 1905, and July 28, 1906, the owners of the original patent surrendered it and applied for a reissue. We are of the opinion that due diligence was exercised in discovering the mistake in the original patent, and that the lapse of less than eight months, under the circumstances of this case, should not be held unreasonable, and was not an abandonment of the new matter claimed in the reissue, and this contention of the defendants is denied.

Defendants urge noninfringement of the patent in suit. An illustration of the interior construction of defendants' motors A and B, which it was alleged by complainant were infringements, appears in this record as complainant's exhibit. An expert witness upon the witness stand states that a hydraulic engineer and expert in this class of machinery carefully analyzed the two claims of the patent, and reads them element for element on defendants' structure. A comparison of the claims of the patent, with the illustrations of defendants' motors, shows the following comparison:

## Claim I.

(a) In a water motor.

(b) A cylinder. (This element is present in defendants' motors.)

(c) A piston divided into two noncommunicating chambers. (This element is present in defendants' motors.)

(d) Hollow rods communicating with said chambers. · (These elements are present in defendants' motors.)

(e) Double puppet inlet valves and double puppet exhaust valve, mounted in said piston. (These are present in defendants' motors.)

(f) Springs adapted to impart to said valves their final movement, after being unseated, thereby reversing the travel of the piston. (These are present in defendants' motors.)

An examination of the drawing of defendants' motors introduced in evidence shows the exhaust valve in engagement with the stems. In moving to this position the springs have been compressed until said valves engaged the stems. The engagement between the valves and stems causes the initial movement of said valves from their seats. The force of the water which was then holding the valves on their seats becomes balanced or equalized on both sides of the piston, and the expanding action of the springs throws the valves to their opposite seats, and thus completes the movement of the valves, and enables the pressure of the water on one side of the piston to exceed that on the other, and to thus move the piston back and forth within the cylinder.

The foregoing description is a fair statement of the action of the motors of the defendants which are alleged to infringe the patent of this complainant. If this be true, it would seem that they come within the terms of claim I of the patent, without invoking the doctrine of equivalents. The foregoing description is the precise action of the motor of the patent in suit, as appears from the specifications of the reissued patent.

An examination of defendants' motors further reveals the fact that substantially the same make of springs are used as those designated in complainant's patent, and substantially the same valve stems are employed. Defendants seem to have undertaken to avoid this claim by severing the stems from the valves and fixing them upon the cylinder heads, and, instead of supporting the springs upon the stems, they are supported upon the cylinder heads. An examination of the action of the defendants' motors shows that, when the stems and springs come into action to perform their functions, the stems are engaged

by the ends of the valves, and perform the same function as if they were at that time a part of the valves. A further examination discloses that the springs are placed in alignment with the valves, so that they may be compressed by the ends of the valves up to the point where said valves engage the stems.

It will therefore be seen that if the valve stems of defendants' motors were removed from the cylinder heads, and rigidly united to the ends of the valves, and the springs were reversed, and the small end of said springs made to surround and engage the said stems, the action of the defendants' motors would not be changed. These parts would serve the same purpose in the same way. This is, without the least variation, the identical action of the stems and springs of the complainant's motor.

It is interesting also to note a comparison with complainant's

### Claim II.

(a) In a water motor.

(b) A cylinder. (This element is present in defendants' motors.)

(c) A cylinder having inclosed heads. (The inclosed heads are present in defendants' motors.)

(d) A piston divided into two noncommunicating chambers. (Present in defendants' motors.)

(e) Hollow piston rods communicating with said chamber. (These elements are present in defendants' motors.)

(f) Balance exhaust valve lying on the outside of one of said chambers and seating against the outer sides of said piston. (These elements are present in defendants' motors.)

(g) Said exhaust valves being connected to a common stem and having extensions beyond the valves. (The stem which connects said exhaust valves is present in defendants' motors. The extensions beyond the valves are the stems which are present in defendants' motors and perform the same functions.)

(h) Balance inlet valve located within the other chamber. (Present in defendants' motors.)

(i) Said inlet valves having stems projected on each side beyond the piston. (Present in defendants' motors.)

(j) Coil springs carried upon the stems of said exhaust and inlet valves, and adapted to impart the final movement to said valves after said valves have been given their final movement by contact of their stems with the cylinder heads. (This element is present in defendants' motors, except that they are severed from the valves but when they are performing that function they are engaged by the valves and during the performance of said functions the engagement thereof with the valve continues, and they are in effect the same as if they were integral projections extending from the ends of the valves like the motors' of the patent in suit.)

An examination of the evidence discloses that in the case of both the motor in the patent in suit and defendants' motors, when the piston is moving away from one or the other of the cylinder heads, which takes place after the valves are completely reversed, the stems and the

springs have performed their functions, and it makes no difference whether said stems and springs are carried with the valves and piston, as in the complainant's patent, or whether they are supported upon the cylinder heads as in defendants' motors. In both cases they are in position to perform the identical functions when the piston returns in the direction of one or the other of the cylinder heads.

We therefore find, by a comparison of defendants' motors with the motor in suit, that they obtain the same results as complainant's motor, that they employ the same means of obtaining such results, and that the different mechanisms of defendants' motors operate and co-operate in an identical manner with those of complainant's motor to produce the same result. There is no substantial difference in any of these particulars. And, again, the stem and spring in defendants' motors is an obvious mechanical equivalent of the same parts of complainant's motor. Clearly, therefore, there is an infringement.

Some emphasis is laid by the defendants upon what is known as the Bryan patent, No. 346,190. It describes and illustrates a valve gear for steam pumps. Like the different patents referred to in the litigation of the complainant and its predecessor, above cited, the Bryan patent may contain one or more of the elements that are common to engines or motors, but we can find no combination of either of the claims of the patent in suit. It is true that it does show a certain arrangement of collar valves in which springs are used to perform the function of imparting to said collar valves a completed movement. But in all essentials the structure and arrangement of the Bryan device is essentially dissimilar to that of the motor of the patent in suit. Claims numbered I and II of the patent in suit are both for a combination of elements in a water motor, while the Bryan patent relates to a valve gear for a steam pump.

Taking up the matter of comparison again, the elements of claim I in the patent in suit, with the structure of the Bryan patent, while the element "a cylinder" has a corresponding part in the Bryan patent, namely, the steam cylinder of the pump, the element "a piston divided into two noncommunicating chambers" has no corresponding element in the Bryan device. The element "hollow rods communicating with said chambers" has no corresponding part in the Bryan device. The elements "double puppet inlet valves and double puppet exhaust valves, mounted in said piston" have no corresponding elements in the Bryan device. The element represented by "springs adapted to impart to said valves their final movements after being unseated" has no corresponding part in the Bryan device, as it appears from an examination of the drawing that there are no such valves as are referred to in the patent in suit. We have no trouble in determining that the Bryan device is not the equivalent of the combination of spring and double puppet valves in claim I of the patent in suit. A further comparison of the elements of claim II of the patent in suit with the Bryan patent discloses a similar disparity.

It is therefore evident that the Bryan device does not show the combination called for by either claim I or claim II of the patent in suit, does not describe or illustrate a device which possesses the in-

vention set forth in these two claims of the patent in suit. The most that can be said for the Bryan patent is that the inventor had in mind a peculiar valve gear for steam pumps as stated in his patent. This specification that a spring is employed to complete the stroke of this peculiar type of valve in no way suggests the combination of elements set forth in the claims of the patent in suit.

A further analysis of the Bryan patent shows collar valves fastened to a rod extending out to the end of the steam chest, partitions of the valve chest into five chambers, the valve rod passing through a stuffing box in an end of the steam chest, and other items of mechanism, each performing its function, which, when contrasted with the valve mechanism of the patent in suit, show no elements or the equivalents of the patent in suit, contained in the structure of the Bryan patent.

We may add that the evidence of tests of the Bryan patent is far from satisfactory as a demonstration that such a device could be successfully used as a means of operating a domestic washing machine. Clearly it was not designed by its maker, nor adapted to, nor actually used for, the performance of such functions. It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in suit. Topliff v. Topliff, supra. The claim of the defendants with reference to the Bryan patent, therefore cannot be sustained.

The attention of the Court is called to what is referred to as the Kampmann patent, and the Cramer & Hack patent. The record discloses that they were filed, one more than one year, and the other more than two years, after the original Coffield application was filed.

Attention is also called to the Moyer patent, which consisted of a series of cylinders, one imposed upon the other, with a system of lever connections, the whole being designed to be mounted upon the bottom of a tub, and does not contain the invention of the patent in suit, and there is no evidence of its use or utility upon which a finding could be predicated, as urged by the defendants, to the effect that the patent in suit did not for the first time supply the means for operating the domestic washing machine and develop a new industry and a new field.

No error was committed by the trial court in refusing to permit the amendment of defendants' answer to involve the case alleged by defendants to have been brought by Peter T. Coffield & Son, complainant's predecessor, against Hax & Davidson in the Circuit Court of the United States for the Southern District of Ohio. No consideration can therefore be given testimony embraced within this appeal record involving that case.

The next contention of the defendants is the defense of intervening rights, predicated upon the allegation that the public generally, and appellants specifically, acquired, during the interim between the issue of the original patent and the reissue thereof, vested rights. In the opinion filed in this case upon the former hearing in this court, as reported at 209 Fed. 614, 126 C. C. A. 608, it was said:

"There is also abundant evidence to support the contention that defendant acquired no intervening rights between the time of plaintiff's original patent and its present reissue."

It appears from the record that these defendants became aware of the patented motor of the complainants, and proceeded to manufacture and have continued the manufacture and sale of infringements, notwithstanding repeated protests from the complainant and complainant's predecessor, Peter T. Coffield & Son. The record further discloses that about May 1, 1904, the defendant Wayne Manufacturing Company, who were then engaged in the manufacture of hand-operated washing machines and washtubs, sold to said Coffield & Son a number of tubs for use and sale in connection with the patented water motor in suit. It further appears that these commercial relations were continued, and said firm of Coffield & Son developed a valuable business in the manufacture and sale of their patented water motor in connection with said defendants' washtubs.

The attention of manufacturers of hand-operated tubs was attracted to this new means of operation, and letters were received by Coffield & Son inquiring as to the price at which the patented water motor might be obtained by them for resale in connection with their washtubs. It further appears from the record that among these inquiries was a letter from the defendant Wayne Manufacturing Company, dated June 29, 1906. It further appears from the testimony of Coffield that a few months after the receipt of this inquiry complainant's predecessor learned that the defendant Wayne Manufacturing Company was making and selling these water motors, infringing the patent in suit. It further appears that defendant companies thereafter were repeatedly notified of the infringement of said patent, and that they have continued to infringe said patent. It further appears that on December 21, 1909, the president of the defendant Wayne Manufacturing Company wrote a letter to said Coffield, attempting to form a combination between the defendant company and the Coffield Company, whereby the Wayne Company would acknowledge the validity of the patent in suit, and would derive benefits therefrom in the way of keeping up prices in the sale of infringing motors. It appears that no such arrangement could be made with Coffield, and that the defendant company continued the manufacture and sale of the infringing motor.

Upon the entire record we are of the opinion that the said defendant company did not begin the manufacture of water motors prior to the filing of the application for the reissued patent in suit. The record seems rather to support the contention of the complainant that the manufacture of these infringing water motors was not begun until after the attempt to make arrangements with the Coffields failed in June, 1906. This finding is entirely consistent with the letter dated June 29, 1906, written by the defendant Wayne Company, in which it endeavored to arrange for the purchase of complainant's motors in large quantities. It further appears that the first motor made by the Wayne Company had the springs mounted directly on the valve stems. Afterwards these springs were removed from direct connection with

the valves, and were put on the cylinder heads, as shown in the infringing motors above referred to.

Both of these motors were clearly infringements upon the claims of the original patent, and the reissued patent as well. Failing to enter into an arrangement whereby the patented motor might be purchased from complainant's predecessor, failing in the efforts of the president of the defendant company to form a combination or trust with complainant's predecessor, defendants appropriated the invention and became a competitor under two separate and distinct names, one the "Oh-Joy" and the other the "Royal." It appears from the record that the motors were practically identical, but the price at which one was sold was less than the other, the American Washer Company selling under one brand and price, and the Wayne Company selling under the other brand and price. The record discloses that the two companies defendant were in fact the Wayne Company, while pretending to be independent competing companies.

In view of these circumstances, the original patent and the reissued patent in suit were infringed, and are and were both clearly valid as to these appellants. Under these circumstances they can have no established vested intervening rights.

From the entire record we find that appellants had actual knowledge of the patented motor in suit prior to the manufacture by them of a marketable motor, and defendants' motors complained of herein were and are infringements of the complainant's patent; that defendants have persisted in said infringements, disregarding repeated protests from complainant and complainant's predecessor, and cannot now be heard to assert intervening rights.

The decree of the trial court is therefore affirmed, with costs.

HOOK, Circuit Judge, concurs in the result.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes