### BECKWITH v. MALLEABLE IRON RANGE CO.

(District Court, E. D. Wisconsin. August 7, 1913. Supplemental Opinion, August 27, 1913.)

1. ACCOUNT (§ 20*)—ACCOUNTING BEFORE MASTER—PROCEDURE.

   The purpose of equity rule 79 (new rule 63 [198 Fed. xxxvii, 115 C. C. A. xxxvii]), providing that all persons accounting before a master shall bring in their respective accounts in the form of debtor and creditor, and any of the other parties who shall not be satisfied with the account so brought in shall be at liberty to examine the accounting party as the master shall direct, is to limit the trial before the master to disputed items.

   [Ed. Note.—For other cases see Account, Cent. Dig. §§ 9, 40, 94, 95, 97–99; Dec. Dig. § 20.*]

2. PATENTS (§ 322*)—ACCOUNTING BY INFRINGER—PROCEDURE BEFORE MASTER.

   Under such rule, in an accounting in an infringement suit, the proper practice requires the accounting party at the outset merely to file such account, in debtor and creditor form, as, in the light of the principles and express directions of the decree, will exhibit the matters which are the subject of the accounting, namely, on the one hand the sums chargeable, the manufacture and sales, the amounts received and the like, all in such detail as would be required in an account thereof for any other purpose; and, on the other hand, in detail the items of credit or offset, such as cost of material, manufacturing cost and the like, to the end that the statement as a whole will be an account showing gains and profits and such as will furnish a basis for further proceeding in case the adversary is not satisfied therewith. In advance of the bringing in of such account the master cannot, ex parte, call upon the accounting party to embody in such account matters of evidence.

   [Ed. Note.—For other cases see Patents, Cent. Dig. §§ 590–595; Dec. Dig. § 322.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by Arthur K. Beckwith against the Malleable Iron Range Company. On motion by defendant to strike certain specifications from master's summons. Motion granted.

See, also, 203 Fed. 45.

The complainant was awarded a decree for infringement, pursuant to which the cause was referred to a master to take an account of the number of infringing devices made, sold, and used by, also the gains, profits, and advantages received by or accruing to, the defendant; also the damages suffered by the infringement. The matter being thus before the master, a summons or subpœna was issued to the defendant requiring it to appear; to render a sworn statement of account, in writing, of the number of infringing devices made, sold, or used, the details of sales, and the gains and profits made thereon; also requiring specification in such account these further items:

"First. The whole number of ranges made by you with reservoirs described in claim 11 of the patent to complainant, No. 787,425, and referred to in said decretal order.

"Second. That you specify, giving the names and addresses of the persons purchasing said infringing reservoirs, also the date of the purchase, the number purchased, and the size and complete description of the range with reservoir attached so purchased.

"Third. That you indicate, for the period of your infringement of said patent, the selling price of each of said ranges and also of each of said reservoirs, together with the other elements of claim 11 of said patent, and the discounts, freights, and rebates or credits of any description allowed to the purchaser and also the net amount of money actually received by you for: (a) The range; (b) the reservoir.

"Fourth. That during the period of your said infringement you indicate and itemize the manufacturer's cost of the range, itemize the cost for labor and cost for material, and also for the same period that you itemize the manufacturer's cost of the reservoirs, the contact plates, and all attachments used in connection therewith, itemizing the cost for material and the cost for labor.

"Fifth. That you indicate the cost and expense (for the period of said infringement) of selling said ranges with infringing reservoirs attached down to the time you ceased to infringe.

"Sixth. That you indicate the entire profits derived by you from each sale of said ranges with said infringing reservoirs attached, as provided in said decree.

"Seventh. That you indicate the entire profits derived from the sale of ranges with reservoirs attached on account of the utilization of the features contained in the letters patent referred to in the decree in this case.

"Eighth. Also specify the gains and savings made by you during the period mentioned in said decree, by the use of said infringing reservoir over the style formerly used by you.

"Ninth. Also specify the price at which you sold your ranges without reservoirs; also your ranges with reservoirs; and also the actual cost to you of said ranges without reservoir and the actual cost to you of said ranges with said reservoir during the infringing period referred to in said decree.

"Tenth. That you have with you in court all the books and vouchers in your possession on which the said data were originally entered, together with all books and vouchers in your possession which show the cost of labor and materials used in making said infringing reservoirs, especially all daybooks, journals, ledger, order books, blotters, and cashbooks used by you during said infringing period."

Upon the return day the defendant moved to quash the master's summons and refused to comply therewith or to furnish the sworn statement required thereby, excepting as to the tenth paragraph respecting the production of the books and papers. The master overruled the motion. An adjournment was taken, and upon the adjourned day defendant produced a sworn statement, and also its books and records. Such statement showed the number of in-

fringing devices sold but did not contain the other information called for by the summons. The master adhered to his ruling, and the matter was thereupon certified to the court for its directions. On March 7, 1912, Judge Sanborn, presiding therein, rendered a decision quashing the master's summons and directing the accounting to proceed. The judge held, in effect, that equity rule No. 79 (new rule No. 63 [198 Fed. xxxvii, 115 C. C. A. xxxvii]) was not applicable to an accounting in a patent infringement suit. Thereupon the complainant made an application to the Circuit Court of Appeals for a writ of mandamus compelling this court to vacate its order quashing the master's summons, and such writ was awarded; the court ruling, in substance, that equity rule No. 79 was applicable to the situation, and that the accounting proceed in accordance with such rule. Re Beckwith, 201 Fed. 519, 119 C. C. A. 614; Re Beckwith (C. C. A.) 203 Fed. 45.

The mandate having been complied with, and the matter being about to be noticed for further proceeding before the master, the defendant has now made application to strike from the master's summons the requirements contained in all of the items excepting the first, eighth, and tenth.

Harry C. Howard and Fred L. Chappell, both of Kalamazoo, Mich., for complainant.

A. L. Morsell, of Milwaukee, Wis., and Thos. A. Banning, of Chicago, Ill., for defendant.

GEIGER, District Judge (after stating the facts as above). [1] The Court of Appeals, in disposing of the matter which was presented to it, and in ruling that the situation was covered by equity rule No. 63, observed that, the status of an infringer of a patent being recognized as that of a trustee ex malificio, the rules respecting the burden of proof as announced in Westinghouse Co. v. Wagner Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371, are not inconsistent with the applicability of such equity rule, and concludes that "it cannot be open to question that patent accountings are within the general provision of equity respecting the remedies of accounting, and that equity rule No. 79 (new rule No. 63) is both applicable thereto and mandatory in its requirements." Re Beckwith (C. C. A.) 203 Fed. 45.

Equity rule No. 63, thus held to be controlling, reads as follows:

"All persons accounting before a master shall bring in their respective accounts in the form of debtor and creditor; and any of the other parties who shall not be satisfied with the account so brought in shall be at liberty to examine the accounting party viva voce, or upon interrogatories in the master's office, or by deposition as the master shall direct."

It has been suggested that, intermediate the commencement and termination of the proceedings before the master, the court ought not to give directions respecting the course of the procedure. Ordinarily this is true, but, in view of the history of the case and the importance of the question as one of practice, I have concluded to entertain the application and determine it as seems right and consonant with the remedy of accounting as the same is to be followed under the rule.

What, then, is the correct practice to be pursued before a master under the rule in question, taken in connection with the accompanying

rule No. 62 (198 Fed. xxxvi, 115 C. C. A. xxxvi), relative to the pow-
ers of the master? This latter rule reads as follows:

"The master shall regulate all the proceedings in every hearing before him,
upon every reference; and he shall have full authority to examine the par-
ties in the cause, upon oath, touching all matters contained in the reference,
and also to require the production of all books, papers, writings, vouchers,
and other documents applicable thereto, and also to examine on oath, viva
voce, all witnesses produced by the parties before him, or by deposition, ac-
cording to the acts of Congress or otherwise, as here provided, and also to
direct the mode in which the matters requiring evidence shall be proved be-
fore him, and generally to do all other acts and direct all other inquiries and
proceedings in the matters before him, which he may deem necessary and
proper to the justice and merits thereof and the rights of the parties."

It may be observed that rule 63, formerly rule 79, is identical in
language with the sixty-first rule of the English chancery practice
which was in existence in 1842, when the equity rules which were in
force in this country prior to the adoption of the recent new rules
were adopted. The English rules, or "new orders," as they were
called, were adopted in 1828 and worked many changes in the then
English chancery practice, not the least of which was respecting the
taking of accounts before masters. It had been the custom to require
each and every item in the accounting to be proven under proceedings
involving tedious interrogation and examination of items of account,
whether admitted or disputed. The change wrought by the new rule
is commented upon by Mr. Smith in his work on Chancery Prac-
tice, vol. 2, p. 114, referred to by the Supreme Court of the United
States in Thomson v. Wooster, 114 U. S. 104, 5 Sup. Ct. 788, 29 L.
Ed. 105, as "the most authoritative work on English Chancery Prac-
tice in use in March, 1842, when our equity rules were adopted." The
author says:

"The 61 N. O. (new orders) directs all parties accounting before the master
to bring in their accounts in the form of debtor and creditor. This account
is prepared as an affidavit; the body of the affidavit containing a verifica-
tion of the accuracy of the schedules, in which are contained the details of
the account. This affidavit is a substitution for an examination, which was
the manner of accounting before the new orders. By the alteration, inter-
rogatories and the certificates allowing them are saved, together with the ex-
cess of expense of an examination beyond that incurred in preparing an affi-
davit. If the party does not bring in the account within the time fixed, he
is proceeded against in the same manner as a party not putting in his ex-
amination.

"When the account is brought in, if any of the parties are dissatisfied with
it, they are at liberty to examine the accounting party upon interrogatories,
or as the master shall direct. 61 N. O. The manner of exhibiting these in-
terrogatories will be explained in treating on that subject. In disputed ac-
counts, this examination becomes so much of course that I believe it is found,
in such cases, that it is cheapest and best to exhibit interrogatories in the
first instance.

"The debtor and creditor account when sworn to is left in the master's of-
fice, and a warrant on leaving the same is taken out and served on the clerks
in court of the opposite parties, who take copies of the same. As the debtor
and creditor account, whether exhibited, annexed, or scheduled to the affida-
vit, is sworn to, the master cannot proceed upon that document, as it would
be improper for him to alter or vary it."

It therefore seems that one of the purposes of the new English rule ,was to eliminate the evils of the former practice and to furnish a definite basis for the proceedings before the master. That is, the rule is framed upon the theory that at the outset the accounting party will, obediently to the decree, bring in a statement of account embodying upon the one side the items with which he is properly chargeable and upon the other the items claimed to be allowed, just as any one, conceding that a relation of debtor and creditor exists between himself and another, will bring in a statement of what he conceives to be items of debit and items of credit. In this way the opportunity is at once afforded of ascertaining the real issues between the parties before the master upon the accounting; it is the means of limiting the trial before the master to *disputed* items. That this is the purpose of the rule is clearly indicated by its language, conferring upon the adversary the right to proceed as therein directed, in case he is *not satisfied* with the account.

Counsel for complainant has called attention to the language of Judge Seaman in the opinion filed upon the mandamus application:

"The purpose 'of requiring the accounting party to bring in his account in the form of debtor and creditor is to compel discovery from him as to the details of the transaction under investigation.' 2 Bates on Fed. Eq. Prac. 759. See, also, 1 Pomeroy, Eq. Jur. 223–239. So ascertainment of the profits attributable to the infringement requires such discovery, not alone of the gross sales, but of all items of cost entering into the production and sale, which are presumptively within the knowledge or means of information possessed by the infringing manufacturer. In reference to these items, it is rightly averred in ·the defendant's answer that they involve 'many factors and considerations which do not enter into ordinary accountings'; that to ascertain the profits 'many deductions are allowed to the defendant' for various expenses, including 'proportional overhead expenses' entering into the production and sale. Nevertheless they are plainly capable of specification in the form of debits and credits for the purposes of the accounting, and the complications mentioned, together with the fact that the items are within the exclusive knowledge and possession of the defendant, furnish ample ground for such specification in conformity with the equity rule. It cannot reasonably be assumed that these items entering into the cost appear in detail in the ordinary books of account; but, in whatever form the information is preserved or may be obtained by the manufacturer, we believe it to be both the purpose of the rule and in accord with equity to require the defendant, at the outset of the accounting, to make the needful investigation and state the items in detail, having effect, as well, of his admissions of fact and of statements under oath, and thus perform his just part in narrowing the issue upon the accounting to items and matters which are in actual controversy between the parties." Re Beckwith (C. C. A.) 203 Fed. 48.

This language is not in any respect at variance with the contention of the defendant. On the contrary, it points out clearly the analogous situation found in cases of this character and those of ordinary accountings. The purpose of the rule, as stated, "to require the defendant at the outset of the accounting to make the needful investigation and state the items in detail, having effect, as well, of his admissions of fact and of statements under . oath," is the same purpose which has been universally recognized in requiring an ordinary trustee, an administrator, or an executor to return under oath an account, giving on the one side the items of property received and on the other

side, in detail, items claimed by him as justly to be allowed as disbursements in the execution of his trust. The purpose is, as stated, to require the accounting party thus to "perform his just part in narrowing the issue upon the accounting to items and matters which are in actual controversy between the parties."

[2] We are thus brought to the question whether, as matter of correct practice, the master should, ex parte, and in advance, require the accounting party to furnish, in detail, evidence such as statements called for in the items of the master's summons in the present case, no matter what may develop upon the actual hearing. In my judgment the proper practice under the rule requires the accounting party in a patent infringing accounting at the outset merely to file such account in debtor and creditor form as, in the light of the principles and express directions of the decree, will exhibit the matters which are the subject of the accounting, namely, on the one hand the sums chargeable, the manufacture and sales, the amounts received, and the like, all in such detail as would be required in an account thereof rendered for any other purpose; and on the other hand, in detail, the items of credit or offset, such as cost of material, manufacturing cost, and the like, to the end that the statement as a whole will be an account showing gains and profits, and such as will furnish a basis for further proceeding in case the adversary is not satisfied therewith. I know of no reason why an accounting party in a patent suit should be called upon, in advance, to make detailed calculations to furnish statements whose effect is or will be evidentiary only.

The account which the rule requires to be brought in is one thing; the evidence in support or in dispute of any item or items thereof is quite another. The bringing of the former is mandatory upon a party; with the latter neither the parties nor the master has any concern until disputed items present issues calling for evidence; and, in advance of the bringing in of the account, the master cannot, ex parte, call upon the accounting party to embody in such account matters of evidence or in fact anything except such items *as under the law,* independently of subpœna or summons, the accounting party is presumed to embody therein obediently to the decree and to the general provisions of rule 63. In other words, the account in debtor and creditor form is the basis or foundation of any *trial* before the master, serving, with exceptions or objections to any items, as a substitute for pleadings. Therefore, until such foundation is laid, rule 62 can have little or no function to discharge. That rule vests in the master large *regulative powers.* But it does not impair in any degree the effect or character of rule 63. That this must be true may be illustrated by noting the provisions of rule 62 giving to the master power to compel production of books "to examine * * * all witnesses * * * to direct the mode in which the *matters requiring evidence* shall be *proved* before him." Can it be that the master may require proof of any kind, or determine the mode of such proof, ex parte and before any question has been presented, before any issue or dispute has been raised, before *necessity* for *proof* of any kind has arisen? In my judgment these questions must be answered negatively; and correct prac-

tice requires compliance with rule 63 respecting the filing of an account, and *exceptions thereto, as a basis* for exercise by the master of most of the particular powers conferred upon him by rule 62.

I am satisfied that, if complainant's view in the present case were tenable, it would lead to this incongruous result: Rule 63 being held applicable, the party prosecuting the accounting has the *right* to insist that the accounting party comply therewith and bring in his account in debtor and creditor form. This, reciprocally, must confer upon the accounting party, not only the right and duty to so bring it in, but also the right to have the prosecuting party *except to or express his dissatisfaction with it,* as a *condition* of proceeding to "examine the accounting party viva voce, or upon interrogatories as the master shall direct," and as a condition for the exercise by the master of the particular powers conferred upon him by both rules 62 and 63. Therefore, unless the bringing in of the account specified in rule 63 be treated as the *foundation,* the rule is no longer mandatory, and compliance therewith may rest wholly in the discretion of the master, and either party may be deprived of its benefits. It will make possible situations where the accounting party honestly intends to bring in an account which not only *should* but which *may be accepted* by his adversary; and yet he can be obliged, in advance, to submit to examination and, at large expense, to prepare proofs needed only in case of controversy or dissatisfaction. It would seem that the rules are designed to make the proceedings orderly and expeditious, and that this is sought to be accomplished primarily by affording means of limiting the scope of the master's investigations to *contested items.* Therefore neither he nor a party should, in advance, presume that an account, when filed, will be disputed or will give rise to dissatisfaction; but, on the contrary, the necessity of submitting to examination, the necessity of furnishing proofs by the accounting party, must, by the terms of the rule, find its basis in the *filing* of an account, to which exception has been taken. Manifestly, when the party prosecuting the accounting takes exception to items or expresses his dissatisfaction with the account, the master in discharging his functions under the rule ought to afford opportunity to the accounting party to be heard.

The general conclusion is that the practice adopted in the present case is not in accord with rules 62 and 63; that until the accounting party has been afforded opportunity to comply with such rules by bringing in an acount tendered as conforming to the requirements of the decree, and to which the prosecuting party has taken exception, there is no warrant, under the rules, for requiring proofs or specification of evidentiary matter; that the defendant's objections to the second, third, fourth, fifth, sixth, seventh, eighth, and ninth specifications contained in the master's summons are well taken. The other specifications are unobjectionable, because they follow, in substance, the language of the decree and embody only what, in any event, would be required by notice or summons to comply with rule 63 by filing an account.

The defendant's motion to strike from the master's summons the specifications noted will be granted; and the matter will be remitted

to the master, with directions to proceed with the accounting by requiring the defendant to file its account, and, if exception be taken, then to proceed conformably with rules 62 and 63.

An order may be entered accordingly.

## Supplemental Opinion.

The defendant has presented a draft order to be entered in accordance with the opinion filed on the motion to strike from the master's summons certain specifications; and such draft, together with the objections noted by complainant's counsel, calls my attention to the fact that the defendant's motion asked for a modification of the eighth specification contained in the master's summons, by adding thereto the italicized clause, so that it shall read as follows:

"Eighth. Also specify the gains and savings made by you during the period mentioned in said decree, by the use of said infringing reservoirs covered by said claim 11, over the style formerly used by you, *or any other style free and open to you to make and sell, when made and sold under the same conditions as the infringing reservoirs were made and sold.*"

The conclusion, in the original opinion, that all of the specifications excepting the first and tenth should be stricken from the summons, was reached without considering whether any of the specifications directed to be stricken out called for matters which should or should not properly be embodied in an account. The matter was dealt with as one involving the right of the master under correct and orderly practice to require, ex parte and in advance, the return by the accounting party of evidentiary matters, or the framing of the account by inclusion therein of any *specific* items. Hence, having concluded that the master should not proceed in that way, the eighth specification was directed to be stricken out, and for the same reason the defendant's request for a modification must be denied. If the defendant's view of the law as embodied in this proposed modification is correct, it should and will have opportunity to urge that view after filing an account whose sufficiency with respect to the presence or absence of items covered by the phase involved in such specification may then be tested.

The order may therefore be entered as originally directed, and adding thereto a denial of defendant's motion to modify the eighth specification.