COFFIELD MOTOR WASHER CO. v. WAYNE MFG. CO. et al.

WAYNE MFG. CO. et al. v. COFFIELD MOTOR WASHER CO.

(Circuit Court of Appeals, Eighth Circuit. November 11, 1918.)

Nos. 5133, 5134.

1. PATENTS ⬥⟿322—INFRINGEMENT—ACCOUNTING—OBJECTIONS.
    In infringement suit, where defendants' statement of account showed no profits, *held*, that complainant, though it filed no formal objections, was not, under equity rule 63 (198 Fed. xxxvii, 115 C. C. A. xxxvii), restricted to nominal damages; such rule, when considered with equity rule 62 (198 Fed. xxxvi, 115 C. C. A. xxxvi), requiring no particular form of objections to the account filed with the master.

2. PATENTS ⬥⟿312(1)—INFRINGEMENT—PROFITS—BURDEN OF PROOF.
    In infringement suit, the complainant, who seeks to recover profits made by the infringer, who carried on other business, has the burden of showing apportionment, though this duty is often one of making a prima facie case of profit, casting on the defendant the real duty of apportionment.

3. PATENTS ⬥⟿318(1)—INFRINGEMENT—DOUBTS.
    Where the infringement was deliberate, all doubts as to profits should be resolved against the infringer.

4. PATENTS ⬥⟿318(4)—INFRINGEMENT—ACCOUNTING.
    Where defendant sold an infringing washing motor, and the ordinary sales unit consisted of the tub, fixtures, and infringing motor, *held*, that the profits from the sale of fixtures could be recovered only in so far

⬥⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

as the fixtures were useful solely in connection with the style of motor infringed, and complainant could not recover profits on that part of the fixtures which could be used in connection with other styles of motors.

5. PATENTS ☜318(6)—INFRINGEMENT—PROFITS—ALLOWANCE TO DEFENDANT.
On accounting in infringement suit, *held*, that defendant was not entitled to allowance of items claimed as expense of experimental labor, or an item to cover apportionment of interest on capital stock, etc., and defendant should be restricted to interest on the stock of infringing articles kept on hand, etc.

6. PATENTS ☜318(6)—INFRINGEMENT—PROFITS—ALLOWANCE TO DEFENDANT.
In an accounting in infringement suit, *held*, that defendant was not entitled to credit for an item claimed for patterns, as they were useful after infringement ceased, and any depreciation was covered by general depreciation allowance, etc.

7. PATENTS ☜318(6)—INFRINGEMENT—PROFITS—ALLOWANCE TO DEFENDANT.
An infringer, accounting for profits, is entitled to credit for the expense of advertising the infringing article.

8. PATENTS ☜318(6)—INFRINGEMENT—PROFITS—ALLOWANCE TO DEFENDANT.
In infringement suit, where complainant was entitled to recover profits on infringing motor of washing machine alone, *held*, that amount awarded to defendant as expense of tubs of machine was too great.

9. PATENTS ☜318(3)—INFRINGEMENT—PROFITS—AMOUNT.
On appeal from a decree overruling exceptions to the report of a master in a patent accounting, the expenses of the infringer stated, and complainant *held* entitled to recover as profits the sum of $8,179.78.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit between the Coffield Motor Washer Company and the Wayne Manufacturing Company and others. From a decree overruling exceptions to the report of the master in a patent accounting, both parties appeal. Remanded, with directions.

See, also, 227 Fed. 987, 142 C. C. A. 445.

Richard J. McCarty, of Dayton, Ohio, for Coffield Motor Washer Co.

L. C. Kingsland, of St. Louis, Mo. (John D. Rippey, of St. Louis, Mo., on the brief), for Wayne Mfg. Co. and others.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

STONE, Circuit Judge. From overruling of mutual exceptions to report of master in a patent accounting, both parties appeal. The infringing device was a small water-operated motor used upon washtubs. The master's report recommended recovery of profits of $1,-796.75.

[1] Defendants contend that a statement of account rendered by them under equity rule No. 63, having met no formal exceptions from complainant, must be accepted as final, and, as that account showed no profits, the recovery should be nominal damages. This contention is not well taken. Equity rule No. 63 is as follows:

"*Form of Accounts Before Master.*—All parties accounting before a master shall bring in their respective accounts in the form of debtor and creditor; and any of the other parties who shall not be satisfied with the account so

brought in shall be at liberty to examine the accounting party viva voce, or upon interrogatories, as the master shall direct." 198 Fed. xxxvii, 115 C. C. A. xxxvii; Compiled St. 1916, p. 2523; 2 U. S. St. Ann. 534.

The evident and beneficent purpose of this rule was to narrow the scope of the examination before the master. Beckwith v. Range Co. (D. C.) 207 Fed. 848; In re Beckwith, 203 Fed. 45, 121 C. C. A. 381. Often a plaintiff would be willing to accept many items of such an account, thus eliminating them from further controversy or proof. At the same time he is left free to examine the defendant upon any or all of the items if he objects thereto. We do not find in the rule, however, any mandatory requirement that such objections take any particular form. In our judgment, the construction which will make the rule most effective in shortening accountings, and at the same time safeguard the interests of the parties, is as follows: After the account has been filed with the master he may require the plaintiff within a reasonable time to specify the items thereon to which there is objection, and may treat as accepted any items not so specified, confining the proof to the objectionable items. This we deem in harmony with the purposes of equity rule No. 63, and within the powers of the master as defined in equity rule No. 62, 198 Fed. xxxvi, 115 C. C. A. xxxvi (Compiled St. 1916, p. 2522; 2 U. S. St. Ann. 533).

Defendants conducted a large business, of which the tub-motor-fixture portion was but a minor part. As to that portion, the custom was to sell the combined unit of motor, tub, and attaching fixture for a single price, though there were instances of separate sales of the tubs and of the motors.

[2, 3] Defendants contend that the burden of apportionment of profits is on complainant; that such burden has not been sustained, and therefore only nominal damages can be recovered. The contention that the burden of showing apportionment is on complainant is true. This duty is often one of making a prima facie case of profit, casting the real burden upon defendant to make apportionment. Westinghouse Elec. Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. But this contention carries no force here, as the apportionment is sufficiently clear. All doubts should be resolved in complainant's favor, for the infringement has been declared by this court to have been deliberate. Wayne Mfg. Co. v. Coffield Motor Washer Co., 227 Fed. 987, 997, 142 C. C. A. 445.

[4] The next challenge is to the separation of the fixtures or accessories from the motors. As to this the master regarded the ordinary sales unit as composed of three distinct elements: The tub, the motor, and the attaching fixture. Complainant claims that the fixture owed its existence and only use to the infringing motor, was therefore purely accessory thereto, and any profits therefrom should follow the motor.

The evidence discloses that portions of the fixtures, to wit, the dolly parts (dolly dasher, shaft, and collar) could be and were used in connection with any power-operated tub, whether the infringing motor or some other were used, and that the other portions of the

fixture were useful only in connection with this style motor. The profit from the latter should go to the complainant; that from the dolly parts should not.

There is no attack upon the master's finding of $48,707.62, as the total sales of units containing the infringing motors after all proper allowances for returns and collection losses. But both parties claim error as to items included or excluded by the master in arriving at the cost price of the different elements of the unit.

Complainant contends: (1) That the tub cost allowed was too high. (2) That an item ($391.11) for experimental work in connection with the infringing motor should have been rejected. (3) That an item ($958.50) of overhead expense apportioned to the motor business as "capital investment" should have been rejected.

Defendants contend: (1) That the motor labor cost was improperly reduced from $5,391.99 to $3,172.14. (2) That an item ($119.43) for patterns was improperly rejected. (3) That an item ($957.60) for experimental shop labor was improperly rejected. (4) That an item ($1,041.99) for advertising was improperly rejected.

[5, 6] Regarding these different items in the master's report to which the parties object: That of the allowance of experimental labor of $391.11, included with patterns in the item, "Cost of tools and patterns (Ferd Messmer & Co.) $973.56," should have been rejected, as the testimony is not sufficiently clear that this expenditure was made upon the infringing motors alone. The testimony shows experiments with other water motors which defendants were developing, while the infringed motor was a finished, workable article before the infringement began. The infringing motor was manufactured for and not by defendants, who bought the parts and simply put them together and tested them (the labor for which is covered in another allowance). With this reduction the balance of the item is not contested, and is allowed for $582.45. The item of "Capital investment, $958.50," allowed by the master, is rejected. This item was to cover apportionment of interest at rate of 10 per cent. on capital stock of $30,000, representing what was deemed a fair manufacturing return upon the capital stock. This should be rejected for two reasons: First, it would amount to a species of profit, and the infringer should be permitted no profit from any source arising out of the infringement; second, a consideration of the amount of money used in connection with the infringing business and a consideration of the interest allowance (from borrowed money) included in the overhead, which was apportioned, show that sufficient allowance has already been made in the interest item.

Based on yearly sales and average yearly prices, motors averaged defendant in cost $2.39. The testimony also is that the average stock of motors carried by defendant was a supply for 2 or 3 months. During the 61 months of the infringement 5,266 motors were bought and sold by defendant. Defendant carried no long accounts thereon, as practically all bills to it were paid within the discount period. It is certainly sufficiently liberal to allow during the infringing period an average carried supply of 216 motors, or 2½ months' supply. At

the above cost the money continuously invested in motors for 61 months, the accounting period, would be $516.24. During this period the defendant operated on an increasing indebtedness, for which it paid 5 per cent. interest. At that rate the above amount would yield during the infringing period interest to the amount of $131.21. This does not allow for money invested in accessories (except dolly parts), but it is certain that such investment could not have exceeded the above for motors, so that double the above sum, or $262.42, would abundantly cover use of money for both items. On the other hand, the motors and accessories (except dolly parts) are charged by the master with overhead expense, which includes interest on all money borrowed during the infringing period. This interest item allowed in overhead is $15,799.89, and, apportioned (as the parties and master have here done) on a productive labor basis, this part of the overhead would be more than $300 for motors and accessories (except dolly parts). This alone is in excess of the above liberal estimate of $262.-42, and forbids any further allowance.

The item of "Labor, $3,172.14," for motors and accessories, found by the master, is approved in preference to an allowance of $5,391.99, claimed by defendant. The evidence convinces that the claimed amount was not all expended upon these infringing motors, that such an amount would be an unreasonable expenditure for the purpose, and that the amount allowed would have been amply reasonable.

[7] The item of $119.43 for patterns, rejected by the master, was properly refused. These patterns were useful after the infringement ceased, and any depreciation therein during infringement was covered in a general depreciation allowance included in the overhead.

The item of $957.60 for experimental labor was properly rejected by the master. This labor was performed before the period of infringement, and the reasons against the allowance of the other experimental labor item disposed of above apply here.

[8] The item of $1,041.99 for advertising was rejected by the master. Of this amount $344.36 is clearly for the infringing motors, and should be allowed. The balance was properly rejected, as its identity with the motor was not shown.

[9, 10] The above disposes of the specific items which were attacked in this court. There is left the matter of amount of profits and the proper apportionment. In connection with the amount of profits, there remains the contention that the allowance of tub cost was excessive. The master allowed various material, labor, and overhead items as shown by defendants' statement, and from that aggregate found the cost of the tubs, which was more than $3 each. These items were made up partially from actual book entries of expenditures and partially by estimates based upon such. On the contrary, defendants' statements repeatedly showed that in instances where the motors alone had been sold, and allowances made for the tubs, these allowances were much below $3, and several times as low as $1.50; also complainant, which bought all of the tubs it used in the same general market, paid during this period $2 and $2.05 for the same general kind as defendant made. These latter amounts, of course,

included the profit of the manufacturer. It is true, as defendants contend, that their tubs may have cost them more to make than some one else expended. However, they were selling in the same market and were making allowances for tubs at a lower figure, so it seems highly probable that the cost of manufacture by them was not more than the selling price of other manufacturers of the same article in the same market. We find the total cost price to defendants of the tubs to be $2. This includes material, labor, overhead, and all items of cost. The cost of the 5,192 tubs would be $10,384.

Proceeding further in the question of profit: The sale price of $48,707.62 for the unit is unchallenged. The cost price for the unit is made of the above tub cost ($10,384.00); motor parts ($12,114.80), undisputed; accessories ($5,362.07), undisputed; the three items found above of labor ($3,172.14), tools and patterns ($582.45), and advertising ($344.36); and of the overhead chargeable to the motor and accessories. This last item is found as follows:

The overhead of motors and accessories was reached on a productive labor apportionment (the basis used by the master and both parties). This gave the ratio of $3,172.14 (the motor and accessory labor) to $127,725.24 (the total labor), or 2.48 per cent. of the total overhead allowed; 2.48 per cent. of $202,852.44 (the total overhead) is $5,030.84 above. A tabulation of the selling price, cost price, and resulting profit is as follows:

| | | |
|---|---|---|
| Total net sale price | | $48,707.62 |
| Tub cost | | $10,384.00 |
| Motor parts | $12,114.80 | |
| Accessories | 5,362.07 | |
| Labor (motor and acces.) | 3,172.14 | |
| Motor and acces. overhead | 5,030.84 | |
| Tools and patterns | 582.45 | |
| Advertising | 344.36 | |
| Motor and accessories cost | | 26,606.66 |
| Cost of unit | | 36,990.66 |
| Profit | | $11,716.96 |

The final problem is the proper apportionment of the above profits. The master found the complainant could recover alone for the motor. We find it can recover for the motor and for the accessories (except the dolly parts). The total cost of the dolly parts is $776.66. This is found as follows: Two of the above items are "Accessories, $5,-362.07," and "Labor, $3,172.14." The "accessories" item is the purchase price paid by defendants for the complete accessory unit, of which the dolly parts were a portion. The evidence shows that these dolly parts for each accessory or fixture cost $.1002 each. As there were 5,192 such fixtures sold, this cost of the dolly parts would be $520.238. To this cost should be added a proper portion of the labor item of $3,172.14 expended upon the motors and accessories, of the overhead of $5,030.84 upon motors and accessories, and of the advertising expense of $344.36, as expenses arising after purchase of the parts and while they were yet in stock. There is no showing that the "tools and patterns" item had anything to do with the ac-

cessories. There is no reason in the testimony why the apportionment in these three items should not be upon the ratio which the cost of the dolly parts ($520.238) bears to the cost of the motors ($12,-114.80) and accessories other than dolly parts ($4,841.832), which is 3 per cent. ; 3 per cent. of the above labor, overhead and advertising is $256.42, which, added to $520.24, gives $776.66 as the cost of the dolly parts. Total motor and accessories cost, $26,606.66, less total dolly parts cost, gives $25,830 as total cost of motor and accessories, on account of which complainant is entitled to recover profits. This sum is 69.82 per cent. of the total cost of the entire unit (motor, accessories, and tub). Complainant is entitled to recover that percentage of the profit of $11,716.96, which is $8,179.78.

The cause is remanded to the trial court, with instructions to enter judgment for the complainant for $8,179.78 and costs.