## CARSON et al. v. AMERICAN SMELTING & REFINING CO. (substituted for American Smelters' Securites Co.).

District Court, W. D. Washington, S. D. February 18, 1928.

No. 144.

**1. Admiralty ⬤⟶73—Courts ⬤⟶348—Federal District Court in equity or admiralty trials receives all proofs which under any theory may be material (equity rule 46).**

In equity or admiralty trials in federal District Courts, court receives all offered proofs which under any theory may be material, notwithstanding new equity rule 46.

**2. Patents ⬤⟶318(3)—Plaintiff's recovery for patent infringement was determined by profits realized or loss saved by defendant's use of invention as compared with other available means.**

Plaintiff was entitled to recover from defendant for patent infringement any profits which defendant made from use of the invention, or any loss which he saved thereby, as compared with other means then adequate and open to public to obtain equally beneficial results.

**3. Patents ⬤⟶322—Patent infringer's statement of account, showing furnaces operated and infringing tonnages, and profits realized as "nil," held sufficient (federal equity rules 62, 63).**

In patent infringement suit, detailed statement of account filed by defendant, disclosing number of furnaces operated at various places and infringing tonnages, and disclosing amount of profits realized therefrom as "nil," *held* sufficient, within federal equity rules, 62, 63, providing for accounting before master by bringing in respective accounts in form of debtor and creditor.

**4. Patents ⬤⟶322—Patent infringer's statement of account, for operation of furnaces, disclosing tonnage, labor, repair, and fuel cost, followed by standards of comparison, held sufficient (federal equity rules 62, 63).**

Statement of defendant patent infringer of account for operation of side-feeding furnaces in infringement of plaintiff's patent, which disclosed tonnage, cost of labor, repairs, tools, and supplies, fuel, power, slag metal loss, and waste heat credit, followed by statement of several furnaces as standards of comparison, *held* sufficient in form, under federal equity rules 62, 63, relative to accounting before master by bringing in respective account in form of debtor and creditor.

**5. Patents ⬤⟶262—If patent infringer gained nothing from use of invention, plaintiff's remedy is by action at law for damages.**

If defendant gained nothing from use of plaintiff's invention, there could be no decree for plaintiff for profits in equity suit; plaintiff's remedy being by action at law for damages.

**6. Patents ⬤⟶318(4)—Profits from thing produced by infringing means are immaterial, where thing is not patented, or can be produced by methods open to public.**

Where thing produced or partially produced by infringing means is not patented, or can be produced, or has been produced by means and methods open to the public not embodying the patented process, profits are immaterial in suit by patentee, because infringer's profits for which he is liable consist of fruits of advantage in saving or expenses, or gains in efficiency as compared with use of other noninfringing means, which are adequate and produce same result and are open to public use.

**7. Courts ⬤⟶348—Statement of account is not evidence, but merely performs function of pleading (equity rules 62, 63).**

Statement of account in form of debtor and creditor under equity rules 62, 63, is not evidence, and does not establish truth of matters referred to therein, but merely performs function of pleading.

**8. Patents ⬤⟶322—Evidence of defendant's use of invention over long period was not considered on exceptions to master's rulings on statements showing lack of profits (equity rules 62, 63).**

Fact that defendant had changed furnaces at large expense in many of its smelting plants, and continued operations infringing plaintiff's patent for more than 10 years, was not presented for court's determination on exceptions to rulings of master with regard to statement of account presented under equity rules 62, 63, though persuasive against defendant's contention that use of infringing means did not involve profit.

**9. Patents ⬤⟶322—Master properly disposed of records by examining them in connection with every item contained in statement of account (equity rules 62, 63).**

On master's order to produce statement of account in form of debtor and creditor under equity rules 62, 63, master properly disposed of books and records by examining each book which bore on any item contained in statement.

**10. Patents ⬤⟶312(2)—Statements and records, disclosing result of operation of defendant's plant immediately before and after installation of infringing furnaces, held admissible, where defendant claimed infringement resulted in loss (equity rules 62, 63).**

In suit in equity by patentee for accounting for profits for defendant's use of infringing furnaces, where defendant filed statement of account under equity rules 62, 63, showing loss by reason of use of patent, statements of stockholders, or records and documents of defendant corporation, disclosing result of operation of furnaces for two years immediately before and after installation of patent at its plants, should be admitted.

In Equity. Patent infringement suit by George Campbell Carson and another against the American Smelting & Refining Company, substituted for the American Smelters' Securities Company, the original defendant. In accordance with an order of the master in chancery, defendant filed a detailed statement of account showing profits accrued from patent infringement. On exceptions to the master's ruling denying a motion to require a supplemental statement, and to other rulings. Modified and affirmed.

John H. Miller, of San Francisco, Cal., Raymond Ives Blakeslee, of Los Angeles, Cal., and Lewis P. Shackleford, of Tacoma, Wash., for plaintiffs.

Charles Earl, of New York City, George Donworth and Donworth, Todd & Holman, all of Seattle, Wash., and A. F. Mecklenburger, Arthur A. Olson and Jones, Addington, Ames & Seibold, all of Chicago, Ill., for defendant.

NETERER, District Judge. In response to an order of the master in chancery to file a detailed statement of account in form of debtor and creditor under equity rules 62 and 63, showing profits accrued to the defendant from the patent infringement, the defendant filed a statement purporting to show expenses by use of infringing furnaces in its several plants and expenses in use of four other types of furnaces which, it claims, were open to defendant's use and each capable of producing the same result, and which, it asserted, are proper standards of comparison, showing gain by saving from the use of the invention, if any. The statement (side-charging patent in suit) and the statement of one of the four types of center-charged furnaces, follow:

#### Statement of Account.

American Smelting & Refining Company, in Account with George Campbell Carson, John Henry Miller, Trustee, and Carson Investment Company.

American Smelting & Refining Company, Debtor.

To profits, gains, benefits and advantages realized by and/or accrued to defendant herein by reason of using side-charged reverberatory furnaces, of the character declared to be infringing by the Interlocutory Decree herein, by smelting in said furnaces ores and concentrates, as follows:

| Period of Operation. | Location of Furnaces. | *Number of Furnaces. | Adjudged Infringing Tonnage. | Amount of Profits, etc. |
|---|---|---|---|---|
| April 1, 1916, to May 4, 1925. | Tacoma | 1 | 1,725,562 | Nil. |
| June 1, 1923, to Feb. 28, 1927. | Garfield | 5 | 2,350,193 | Nil. |
| November 14, 1915, to May 27, 1926. | Hayden | 4 | 2,347,562 | Nil. |
| February 1, 1925, to December 2, 1925. | El Paso | 2 | 134,381 | Nil. |
| | Total adjudged infringing tonnage | | 6,557,698 | |
| | Total profits, gains, benefits and advantages...... | | | Nil. |

*See paragraph 18 of preceding statement of facts.

#### American Smelting & Refining Company—Tacoma Plant.
#### Reverberatory Furnace Operations on Side Feeding.

Adjudged Infringing Tonnages, Itemized Costs and Costs per Ton, within Alleged Infringing Period, as Shown by Books and Records of Account, April 1, 1916, to May 4, 1925.

| Description. | Year 1916(9 Months). | | Year 1917. | | Year 1918. | | Year 1919. | | Year 1920. | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. |
| Tons ............... | 102,062 | | 139,796 | | 169,186 | | 181,066 | | 215,434 | |
| Operating labor..... | $ 9,906.88 | $ .0971 | $ 15,645.54 | $ .1119 | $ 23,296.50 | $ .1377 | $ 26,216.98 | $ .1448 | $ 27,326.93 | $ .1268 |
| Repairs ............. | 8,487.52 | .0832 | 15,031.19 | .1075 | 21,532.53 | .1273 | 24,296.13 | .1342 | 29,317.96 | .1361 |
| Tools and supplies.. | 2,928.78 | .0287 | 3,211.04 | .0230 | 5,434.03 | .0321 | 4,165.51 | .0230 | 2,768.82 | .0129 |
| Fuel ................ | 50,288.47 | .4927 | 69,888.80 | .4999 | 132,932.98 | .7857 | 210,558.38 | 1.1629 | 247,794.37 | 1.1502 |
| Power .............. | 980.29 | .0096 | 1,530.75 | .0110 | 2,075.34 | .0123 | 4,740.22 | .0262 | 6,109.91 | .0284 |
| Slag metal loss...... | 109,555.54 | 1.0734 | 133,437.67 | .9545 | 173,340.66 | 1.0246 | 146,370.78 | .8084 | 154,499.30 | .7172 |
| Total ............ | $182,147.48 | $1.7847 | $238,747.99 | $1.7078 | $358,612.04 | $2.1197 | $416,348.00 | $2.2995 | $467,817.29 | $2.1716 |
| Waste heat credit... | 22,811.35 | .2235 | 30,804.19 | .2204 | 46,101.83 | .2725 | 69,042.09 | .3813 | 78,084.96 | .3625 |
| Grand total...... | $159,336.13 | $1.5612 | $207,943.80 | $1.4874 | $312,510.21 | $1.8472 | $347,305.91 | $1.9182 | $389,732.33 | $1.8091 |

| Description. | Year 1921. | | Year 1922. | | Year 1923. | | Year 1924. | | Year 1925( 4mo.4days). | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. | Total. | Per Ton. |
| Tons ............. | 198,338 | | 178,786 | | 212,657 | | 240,889 | | 87,348 | |
| Operating labor... | $ 17,387.31 | $ .0877 | $ 16,907.57 | $ .0946 | $ 19,241.49 | $ .0905 | $ 20,160.12 | $ .0837 | $ 6,857.26 | $ .0785 |
| Repairs .......... | 31,082.46 | .1567 | 27,513.64 | .1539 | 31,663.87 | .1489 | 35,054.19 | .1455 | 12,910.74 | .1478 |
| Tools and supplies | 2,695.45 | .0136 | 2,190.15 | .0123 | 1,568.16 | .0074 | 696.16 | .0029 | 325.78 | .0037 |
| Fuel .............. | 271,553.76 | 1.3691 | 223,100.63 | 1.2478 | 168,777.60 | .7936 | 165,003.13 | .6850 | 64,731.11 | .7411 |
| Power ............ | 3,660.60 | .0185 | 4,427.87 | .0248 | 4,899.50 | .0230 | 4,253.02 | .0176 | 1,223.69 | .0140 |
| Slag metal loss.... | 103,245.97 | .5206 | 115,682.17 | .6470 | 126,864.61 | .5966 | 132,784.31 | .5512 | 47,808.55 | .5473 |
| Total ............ | $429,625.55 | $2.1662 | $389,822.03 | $2.1804 | $353,015.23 | $1.6600 | $357,950.93 | $1.4859 | $133,857.13 | $1.5324 |
| Waste heat credit | 84,925.72 | .4282 | 76,374.04 | .4272 | 63,981.90 | .3009 | 58,830.22 | .2442 | 22,510.24 | .2577 |
| Grand total.... | $344,699.83 | $1.7380 | $313,447.99 | $1.7532 | $289,033.33 | $1.3591 | $299,120.71 | $1.2417 | $111,346.89 | $1.2747 |

American Smelting & Refining Company—Tacoma Plant.

Summary of Reverberatory Furnace Operations.

Adjudged Infringing Tonnages, Total Itemized Costs and Total Average Cost per Ton on Side-Charged Reverberatory Furnaces, in Comparison with Four Types of Center-Charged Reverberatory Furnaces (Standards of Comparison), Together with Cost Differentials in Total and Per Ton, for Period April 1, 1916, to May 4, 1925.

| Description. | Total Tonnage Smelted by Side-Charged Furnaces. | Total Costs on Side-Charged Furnaces. | Total Costs on Center-Charged Furnaces by Standards of Comparison. | | | |
|---|---|---|---|---|---|---|
| | | | No. 1 Basic. | No. 2 Fettled. | No. 3 Heggie Manger. | No. 4 Water-Jacketed. |
| Tons smelted .....................| 1,725,562 | | | | | |
| Operating labor.......................... | | $ 182,949.58 | $ 162,652.80 | $ 201,237.45 | $ 185,755.33 | $ 162,652.80 |
| Repairs .................................. | | 236,890.23 | 289,798.53 | 266,045.07 | 270,443.66 | 286,990.50 |
| Tools and supplies....................... | | 25,983.88 | 12,057.42 | 12,057.42 | 12,057.42 | 12,057.42 |
| Fuel ..................................... | | 1,604,629.23 | 1,397,441.02 | 1,419,576.23 | 1,419,576.23 | 1,397,441.02 |
| Power .................................... | | 33,901.19 | 34,147.66 | 34,147.66 | 34,147.66 | 55,758.23 |
| Slag metal loss.......................... | | 1,243,589.56 | 1,091,904.78 | 1,091,904.78 | 1,091,904.78 | 1,091,904.78 |
| Waste heat credit........................ | | 553,466.54 | 511,523.45 | 514,309.43 | 514,309.43 | 511,523.44 |
| Cost Corrections: | | | | | | |
|   Boiler dust—Smelting............... | | | 4,464.54 | 4,464.54 | 4,464.54 | 4,464.54 |
|   Flue dust—Handling, roasting, and smelting.... | | | 11,093.03 | 11,093.03 | 11,093.03 | 11,093.03 |
|   Flue dust—Metal loss............... | | | 7,806.02 | 7,806.02 | 7,806.02 | 7,806.02 |
|   Matte launder shells—Handling, roasting, and smelting ...................... | | | 6,108.10 | 6,108.10 | 6,108.10 | 6,108.10 |
|   Foul slag—Handling, roasting, and smelting..... | | | 12,768.05 | 12,768.05 | 12,768.05 | 12,768.05 |
|   Fettling material—Roasting....................... | | | 60,202.62 | 41,882.07 | 41,882.05 | 60,202.62 |
| Total cost............................... | | $2,774,477.13 | $2,541,168.82 | $2,557,028.74 | $2,545,925.19 | $2,559,971.37 |
| Total cost per ton....................... | | $1.6079 | $1.4727 | $1.4819 | $1.4754 | $1.4836 |
| Differential in total cost in favor of center-charged furnaces................... | | | $233,308.31 | $217,448.39 | $228,551.94 | $214,505.76 |
| Differential in cost per ton of charge smelted.... | | | $0.1352 | $0.1260 | $0.1325 | $0.1243 |

The other three are of like form.

The statement also contains the claim that producing matte in the furnace is one of many steps in producing copper, etc., from ore; that in carrying out the numerous steps of the process in the producing of blister and refined copper, the defendant has used, and used throughout all the time, a large number of machines and devices patented either in whole or in part, and processes and steps in the processes, patented or open to the public, and apparatus, tools, instruments, appliances, and the like, which are patented. It sets out the following as a partial list, either in whole or in part: Vibrating screens of various types, crushers of various types, grinders of various types, rolls of various types, conveyers of various types, electric motors, electric generators, sampling machines and apparatus, roasters, roaster arms, air seals for roaster feed chutes, coal feeders, coal burners, oil burners, features of reverberatory furnace construction, convertors, convertor linings, and methods of applying, turbine pumps and engines, air compressors, silica guns, locomotive and traveling cranes, electric dust precipitators or various types, elevators, recording pyrometers, thermo couples, stack testers, gauges of various kinds, coal pulverizers, coal dryers, casting machines, pressure recorders of various kinds, meters of various kinds, valves and gates of various kinds. That in the Garfield smelting plant there are upwards of 150 different machines and devices, either marked patented or known to be patented in whole or in part, used in the production of blister copper, and a correspondingly large number in each of the other copper smelting plants, and many improvements are used which are open to the public, and the statement shows there was no profit. At bar it was stated that there was an actual loss in the operation by use of the side-charging furnace over that shown by the proper standards of comparison.

The plaintiff moved an order that defendant furnish a supplemental statement with respect to all its plants, setting forth in detail by figures, first, the cost of converting the matte produced in the blister copper; second, the cost of refining the blister copper and other values in the saleable form; third, all receipts and returns from treatment of ores for customers, and other values, where the defendant did not sell the copper, but returned and delivered the same to said customers; fourth, all receipts and returns, etc., from all sales or other dispositions by defendant of all copper and other values resulting from the matte produced in the infringing furnaces by the infringing process.

The plaintiff also, by oral motion, sought

to strike out parts of the defendant's statement, and propounded special interrogatories to be answered by the defendant, also moved that the defendant be required to file with the master its various annual statements to its stockholders, showing receipts and disbursements, and net profits realized during the infringing period.

The master held that the issue to be determined is: "What advantage did the defendant derive from using the complainant's invention over what he had in using the other processes then open to the public and adequate to produce an equally beneficial result? The fruits of that advantage are his profits." And, so determining, he held that the defendant can only be required to account for the savings or advantages, if any, to the defendant derived from using the infringing furnace as compared with the use of some other type of furnace, or means adequate to produce the same result, and open to its use at the time of the infringement, and that the account filed, on its face, meets the requirements, when the relative cost of using the infringing furnace is shown, as compared with other standard types of furnaces which were open to the defendant, and adequate.

The master denied the plaintiff's motion to require the filing of a supplemental statement with respect to all its plants; also denied the motion to strike those parts of the defendant's statement of account which relate to the proposed standards of comparison, except waste heat credit; denied the motion on special interrogatories; also denied the motion requiring it to produce and file its published annual statements to its-stockholders showing its receipts and disbursements. This was denied with a reservation that, should subsequent developments show materiality, the motion might be renewed.

Exceptions were taken to all of the rulings, and on plaintiff's motion the records were certified to this court for review and direction to the master in chancery as to the course of procedure.

[1] On behalf of the plaintiff it is asserted that all proofs offered should be taken, so that the appellate court may render a final decree and not remand the case for a new trial. The rule of procedure in this court is, and has been, in equity or admiralty trials, to receive all offered proofs, if under any theory they may be material, even under the new equity rule 46, which says: "The trial court shall pass upon the admissibility of all evidence offered as in actions at law." But when it clearly appears that the evidence is not within the issue, it should not be taken. First Nat. Bank v. Abbott (C. C.

A.) 165 F. 852. See, also, Dowagiac Mfg. Co. v. Lochren (C. C. A.) 143 F. 211, 6 Ann. Cas. 573; Western Union Tel. Co. v. Amer. Bell Tel. Co. (C. C. A.) 203 F. 785; Vacuum Cleaner Co. v. Platt (C. C. A.) 196 F. 398.

Rule 62: "The master shall * * * have authority * * * to require production of all books, papers, writings, vouchers, and other documents. * * * "

Rule 63: "All parties accounting before a master shall bring in their respective accounts in the form of debtor and creditor, * * * and the other party may examine the accounting party by viva voce or upon interrogatories as the master may elect."

The issue before the court rests upon the relation of the tendered statement to equity rule 63. If this rule is satisfied, the motion to strike, and the interrogatories, and the demand for annual statements to the stockholders must fail.

[2] The first inquiry is: Did the defendant make profit from the use of the invention, as compared with other means then adequate and open to the public to obtain equally beneficial results (Dunkley Co. v. Central Cannerie Co. [C. C. A.] 7 F.[2d] 972; Mowry v. Whitney, 81 U. S. 620 [14 Wall.] 20 L. Ed. 860; Tilghman v. Proctor, etc., 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664), or did the defendant save itself from loss by the use of the invention. Cawood Patent, 94 U. S. 695, at 710, 24 L. Ed. 238.

The record is replete with evidence of the intelligent conscientious and painstaking attention given by Judge Ellis, the master, who has had long and creditable judicial experience as Justice and Chief Justice of the Supreme Court of the state, to the determination of the issue before the court. He has analyzed, distinguished, and applied all of the cases cited by the respective parties in the exhaustive oral arguments, supplemented by written briefs.

[3] The statement discloses the number of furnaces operated at the several places and infringing tonnages, and in the profit column is "nil." Objection is made to the employment of "nil," because it is not a designation in dollars and cents. This is supercritical, because it expresses "nothing," and is as fully within the intent and meaning of rule 63 as "$0,000.

[4] Following this statement is a statement of account for operating on side-feeding furnace (infringing patent), disclosing the tonnage treated, cost of labor, repairs, tools and supplies, fuel, power, slag metal loss, and waste heat credit (waste heat credit is stricken) from April 1, 1916, to May 4, 1925,

followed by a statement of the several furnaces as standards of comparison, covering the same furnaces and the same period of time.

The form of the statement, I think, is within the intent and meaning of rule 63. The plaintiff can recover only the difference between the standards of comparison which the defendant had a right to use, and the infringing process, which he did use. If there was no profit from the use of the patent over and above the profit on the standards of comparison, no profit or gain could be noted in the statement.

Plaintiff, at bar, admitted that, if the defendant used some process not infringing, which accomplished the same results, it would be entitled to show the cost under that process, and the profit which the defendant must account for is the difference between what it would have cost it under the standards of comparison and what it did cost under the patent; that is conceded to be the law. This information is disclosed by the statement.

[5] Equity rule 63 does not change substantive law, and the substantive law must control; and the fact that no credit or gain is disclosed by the statement over the gain without infringement, cannot alter the form of the statement, and if the defendant gained nothing from the use of the plaintiff's invention, there can be no decree for profits; and the plaintiff's remedy is by an action at law for damages. Tilghman v. Proctor, supra.

The many cases cited by the plaintiff can be classified, and have application:

[6] When the profit can only be produced by the sale of such patented means, the entire profits from the sale are material, because recoverable (Carborundum Co. v. Electric etc. Co. [C. C. A.] 203 F. 976; Byerly v. Sun. Co. [D. C.] 226 F. 759; Western Glass Co. v. Schmertz Wire Glass Co. [C. C. A.] 226 F. 730; Expanded Metal Co. v. Gen. Fireproofing Co. (D. C.) 247 F. 899–908; Hemolin Co. v. Harway, etc., Co. (C. C. A.) 166 F. 434; Producers', etc., Corp. v. Lehmann [C. C. A.] 18 F.[2d] 492–496); and where all profits resulted and could only be produced by combination of several patented devices, profits are material because they must be accounted for and apportioned (Kintner v. Atl. Com. Co. et al. [D. C.] 294 F. 136); or where the total commercial value is derived from the unlawful use of a patented process, the entire profits from the sale thereof are material, because such profits are attributable to the invention (Phila Rubber Works Co. v. U. S. Rubber, etc., Co. (D. C.) 276 F. 600, affirmed [C. C. A.] 277 F. 171; Elizabeth v. Paving Co., 97 U. S. 126, 24 L. Ed. 1000); or when the total value of a device as a marketable article is attributable to a patented invention of an essential part of such device, the entire profits from the sale are material, because profits must be accounted for as essentially attributable to the invention (Comp. Scales Co. v. Toledo Comp. Scales Co. [C. C. A.] 279 F. 648; Crosby Steam Gage & Valve Co. v. Consol., etc., Co., 141 U. S. 441, 12 S. Ct. 49, 35 L. Ed. 809; Wales v. Waterbury Mfg. Co. [C. C. A.] 101 F. 126); or where a distinct part of a mechanism is covered by patent, the entire profits derived from the sale of such infringing mechanism are material, because they must be apportioned, and the patentee is entitled to the part attributable to his invention (Seeger Refrig. Co. v. Am. Car & Found. Co. [C. C. A.] 219 F. 565; Beckwith v. Malleable Iron Range Co. [D. C.] 207 F. 848; Coffield Motor Washer Co. v. Wayne Mfg. Co. [C. C. A.] 255 F. 558; Starr Piano Co. v. Auto-Pneumatic Action Co. [C. C. A.] 12 F.[2d] 586; Westinghouse, etc., Co. v. Wagner, etc., Co. [C. C. A.] 281 F. 453; Dowagiac Mfg. Co. v. Minnesota, etc., Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398; Taylor v. Steuernagel [C. C. A.] 19 F.[2d] 298); but where the thing produced, or partially produced, by the use of the infringing means is not patented, or can be produced, or has been long produced, by means and methods open to the public, and not embodying the patented means, the profits are immaterial, because the infringer's profits from the use of the infringing means consists of the fruits of the advantage in saving or expenses or gains in efficiency as compared with the use of other non-infringing means adequate and producing the same result and open to use during the time of infringement, and this brings us to the issue at bar. Mowry v. Whitney, 81 U. S. (14 Wall.) 620, 20 L. Ed. 860; Cawood Patent Case, 94 U. S. 695, 24 L. Ed. 238; Tilghman v. Proctor, 125 U. S. 136, 8 S. Ct. 894, 31 L. Ed. 664; Sessions v. Romadka, 145 U. S. 29, 12 S. Ct. 799, 36 L. Ed. 609; Webster Loom Co. v. Higgins (C. C.) 43 F. 673; Columbia Wire Co. v. Kokomo Steel & Wire Co. (C. C. A.) 194 F. 108; Coupe v. Royer, 155 U. S. 565, 15 S. Ct. 199, 39 L. Ed. 263; McCreary v. Pa. Canal Co., 141 U. S. 459, 12 S. Ct. 40, 35 L. Ed. 817; Brown v. Lanyon Zinc Co. (C. C. A.) 179 F. 309; Morgan Const. Co. v. Forter-Miller Eng. Co. (C. C. A.) 234 F. 324; Cambria Iron Co. v. Carnegie Steel Co. (C.

C. A.) 224 F. 947; Minerals Sep. Co. v. Butte Superior, etc., Co. (D. C.) 274 F. 878; Southern Textile Mch. Co. v. Fay Stocking Co. (C. C. A.) 259 F. 243–246; Amer. Pneumatic Serv. Co. v. Snyder (D. C.) 241 F. 274; Empire Rubber & Tire Co. v. De Laski, etc., Co. (C. C. A.) 281 F. 1; Dunkley v. Cent. Cal. Canneries (C. C. A.) 7 F.(2d) 972 (9th Circuit). And this conclusion disposes of the question here presented.

[7] The statement of account, of itself, is not evidence, nor does it establish the propriety of the standards used. The propriety of the standards is not before the court. That is an issue of fact to be determined by evidence. The true standard must be determined upon competent evidence. The tendered statement of account performs only the functions of a pleading. Armstrong v. Belding Bros. & Co. (D. C.) 280 F. 895. The account here is in striking contrast with that in the Schoenhofen Brewing Co. v. Alvey-Ferguson Co. (C. C. A.) 14 F.(2d) 945, where no fact was stated, but rather conclusions and arguments expressing doubt as to whether there were profits, and the contingency in that case is not present here. Nor is the doctrine of confusion of profits (Westinghouse v. Wagner, 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. [N. S.] 653) now before the court.

[8] The change to the furnace in issue by defendant's engineers at large expense in the many smelting plants of the defendant, over known appliances, and operation for more than 10 years, may be very persuasive against the contention of defendant's experts who prepared the account, but that is not now before the court. The truth must be sought, and the master will enforce any rule or permissible method to produce it. Penn Steel Co. v. N. Y. City (C. C.) 182 F. 155, clearly has no application, nor does Beckwith v. Malleable Iron Range Co. (D. C.) 207 F. 848, illuminate the applicability of equity rule 63 to the issue before the court.

[9] The question of examination of books and records under rule 62, although referred to in argument, is not before the court. It has been definitely disposed of by the master at page 326 of the record, in which he says: "I do think he has the right to examine every book that bears upon the statement as filed, of the account as compiled by the defendant; and not only totals that are shown there; but everything that bears upon every item that goes into that." It is thus apparent that the master has the right conception of equity rule 62 and has made application thereof.

[10] The master has likewise left open the question of the statements to stockholders to be again considered when the proper occasion arises. I think, in view of the statement filed and announcement at bar that defendant lost upwards of $877,000 by reason of the use of plaintiff's patent, that the statements to stockholders or the records and documents of the defendant disclosing the result of operation for two years immediately before and two years immediately after installation of plaintiff's patent at each plant, should be now produced for counsel's information and guidance in examination of the experts who prepared the account of debtor and creditor. While the court is not concerned with ultimate profits, this is fact evidence and may bear upon the credibility or weight to be given to the contention now presented by the defendant.

Whether further statements shall be produced will be disposed of by the master in the manner already indicated. With this qualification, the ruling of the master is affirmed.