**Francis S. LEVIEN, Plaintiff,**

v.

**SINCLAIR OIL CORPORATION and Sinclair Venezuelan Oil Company, Defendants.**

Court of Chancery of Delaware, New Castle.

Nov. 9, 1972.

Richard F. Corroon and Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, and J. Lincoln Morris and Edward S. Cowen, of Pollack & Singer, New York City, for plaintiff.

E. N. Carpenter, II and R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, and Paul W. Williams, Floyd Abrams and Eugene R. Scheiman, of Cahill, Gordon, Sonnett, Rheindel & Ohl, New York City, for defendant Sinclair Oil Corp.

Victor F. Battaglia, of Biggs & Battaglia, Wilmington, for defendant Sinclair Venezuelan Oil Co.

DUFFY, Chancellor:

The significant facts of this derivative action are stated in the opinion of the Delaware Supreme Court, Del.Supr., 280 A.2d 717 (1971), and in the opinion of this Court, Del.Ch., 261 A.2d 911 (1969). Following a separate trial limited to the issue of liability, Sinclair Oil Corporation (Sinclair) is now bound to account to its subsidiary, Sinclair Venezuelan Oil Company (Sinven) with respect to certain transactions and duties flowing from a contract which Sinclair caused Sinven to make with Sinclair International Oil Company (Sinclair's wholly-owned subsidiary). The current issues involve rights to discovery and the procedure to be followed in ascertaining damages.[1]

### A.

The order of this Court dated February 26, 1970, as affirmed by the Supreme Court, provides:

"2. With respect to the contract dated September 28, 1961, between Sinclair International Oil Company ('International') and . . . [Sinven]:

(a) As to plaintiff's claims arising from the late payment of invoices during the period from October 1, 1961 through 1966, Sinclair shall account to . . . [Sinven] for interest on the unpaid balance with respect to each sale, at the legal rate prevailing in New York, computed for each sale from the date which is five (5) days after the date of invoice to the date of payment.

(b) As to plaintiff's claims arising out of the failure by International to purchase the minimum contract quantities of crude oil and refined products during the period from October 1, 1961 through 1966, Sinclair shall account to . . . [Sinven] for the damages which . . . [Sinven] sustained as a result of such failure.

(c) Sinclair may show as part of its case on the damage issue under subparagraphs (a) and (b) above, any benefit which the contract prices conferred on . . . [Sinven] during the period in question. Judgment is reserved on the question of how much credit, if any, shall be allowed to Sinclair for any such benefits conferred. Any such credit will be limited to derivative claims arising out of the contract with International as set forth in subparagraphs (a) and (b) above and will not be allowed as offsets against any other claim or accounting allowed herein."

Citing Auerbach v. Cities Service Co., Del.Supr., 37 Del.Ch. 43, 143 A.2d 904 (1958), Sinclair argues that the case now takes on the form and substance of an accounting action and, at oral argument, counsel for Sinclair filed with the Court an accounting prepared by Arthur Young & Company, Certified Public Accountants. Sinclair says that the accounting should now proceed in the traditional fashion pro-

---

1. The rulings on discovery issues are in an unreported schedule to this opinion.

vided by equity practice and this should precede any discovery. Sinclair suggests that exceptions may be filed to the accounting, hearings may be held on the exceptions and so on. Plaintiff argues that the case should proceed as an ordinary trial for damages.

#### B.

 Chancery Rules 123–129 fix the procedure to be followed when an exception is taken to an account (after examination by the Register in Chancery). These include the filing of exceptions, a hearing thereon, the taking of testimony by the Court or a master and so on. The procedure is similar to that followed under the old Federal equity practice. See, e. g., Beckwith v. Malleable Iron Range Co., 207 F. 848 (E.D.Wis.1913). That procedure has no application to this case.

This is a derivative suit and is to be considered as if the injured corporation itself were suing defendants. Bokat v. Getty Oil Co., Del.Supr., 262 A.2d 246 (1970). The injury is breach of contract and the "accounting" sought by plaintiff is no more than a shorthand way of saying that plaintiff claims damages (for Sinven) which he is unable to specify with particularity because the information with respect thereto is in the hands of Sinclair.

The nature of a derivative suit and its relationship to a traditional action for accounting was discussed by the Supreme Court. Rebstock v. Lutz, Del.Supr., 39 Del.Ch. 25, 158 A.2d 487 (1960), a derivative action against corporate directors. Rejecting a contention that because plaintiff had asked that defendants be required "to account" for damages the suit was

therefore one for the equitable remedy of accounting, the Court said:

" . . . Clearly, the word 'account' is used in the broad sense of 'pay'. What the complaint looks to is a money judgment against defendants based on corporate wrongs. Equitable jurisdiction in such a case does not rest upon the equitable remedy of accounting; it rests upon the derivative nature of a stockholder's suit, which is cognizable only in equity. 13 Fletcher, Cyclopedia Corporations, § 5944. As the Chancellor said, a plaintiff in such a case may well make a showing without the necessity of the filing of an 'account' in the technical sense. Such an accounting is not a necessary step in many such suits.

Defendants' argument is hardly more than a play on words."

So here, the words "account," "account to" and "accounting" have been used in the broad sense, and this lawsuit is in equity not because an "accounting" is sought, but because the stockholder's derivative suit was fashioned by courts of equity and cognizable only in those courts. It is a distinct and peculiarly equitable action, and nothing about it compels this Court to follow traditional accounting procedure in what amounts to an action for damages flowing from breach of contract.[2]

#### C.

 Sinclair also bases an argument upon the separate trial of liability but the nature of the suit is not changed merely because the Court ordered separate trials on the issues of liability and damages.[3]

That was done because there were complicated issues as to liability and/or "dam-

---

2. There may be cases in which a derivative suit, considered as if brought by the injured corporation, is such that a traditional accounting is appropriate. But that will depend upon the nature of the wrong upon which the claim is pursued.

3. The Court's order of April 24, 1968 provides:

"2. Plaintiff's motion for separate trials on the issues of liability and damages is granted and the trial commencing on September 16, 1968 will be limited to the issues of liability."

ages" and those issues could be separated without significant prejudice to any party.[4]

A separate trial on the issue of liability has been ordered by this Court in many cases over the years, particularly in actions in which an "accounting" has been sought. The same procedure is frequently followed in the Federal courts in a variety of cases, including patent and antitrust suits. See 9 Wright and Miller, Federal Practice and Procedure § 2390; Annotation, 12 A.L.R. Fed. 831, § 6 (Antitrust); Note, "Separate Trial of a Claim or Issue in Modern Pleading: Rule 42(b) of the Federal Rules of Civil Procedure," 39 Minn. L.Rev. 743 (1955). While such separation of issues is not uncommon in this Court, judicial comment about the practice is limited. Indeed, there is not to my knowledge, a writing by or about the Delaware Courts which describes the procedure to be followed at the second stage of trial. But it is my view that ordering separate trials on the issues of liability and damages does no more than just that: it divides the trial into two different time periods, the first to be devoted to liability, the second, to damages. This means that in a derivative suit, when an "accounting" is sought by plaintiff and when it is determined that defendant must give that accounting, it does not follow that a lawsuit begun with its burden of proof upon plaintiff to prove both liability and damages is thereby transformed into something else.

Certainly, without something more, an order under Rule 42(b) changes neither the character of a lawsuit nor the nature of the relief to be awarded. And it does not alter the procedural norm which would be followed in a unified trial.

The action is therefore still one in which damages are sought, and, as plaintiff conceded at oral argument, he has the burden of proving any damages which he wants assessed by the Court against Sinclair.

Order on notice.

---

4. Rule 42(b) provides for separate trials by stating:
 "The court in furtherance of convenience or to avoid prejudice or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues."